# J. J. STACK, Trustee,

*v.*

THE PEOPLE *ex rel.* Will L. Talbott, County Treasurer.

*Opinion filed October 24, 1905.*

1. DRAINAGE—*section 37 of Levee act, permitting commissioners to assess benefits, is valid.* The provision of section 37 of the Illinois Levee act, (Laws of 1885, p. 124,) permitting the commissioners, in case the court so orders, to make an assessment of benefits in lieu of a jury, is valid, provided the benefits do not involve an assessment of damages on account of property taken or damaged, which matter is solely the province of a jury.

2. SAME—*section 3 of Levee act governs the manner of giving notices under section 37.* Section 37 of the Levee act, by providing for two weeks' notice of the hearing of a petition for the levy of an additional drainage assessment in the manner required by section 3 of the act, makes said section 3 govern the *manner* of giving notice but does not require the notice to run three weeks, as that section provided.

3. SAME—*when provision for affidavit as to non-resident owners is sufficiently complied with.* A petition for an additional drainage assessment, sworn to by the commissioners and containing a statement of the names and places of residence of non-resident owners of the district, constitutes a sufficient compliance with that provision of the statute which requires the petition to be accompanied by an affidavit giving the names and addresses of non-resident owners.

4. SAME—*notice of hearing to revise assessment need not be given ten days before first day of term.* Under sections 37 and 19 of the Levee act, construed together, it is not necessary that the notice of the hearing to revise an assessment of benefits made by the commissioners be given ten days before the first day of the term, but only ten days before the time fixed by them, within the term, for said hearing.

5. SAME—*when judgment is conclusive as to sufficiency of notice.* A judgment confirming an additional drainage assessment, which finds and recites that due notice was given, is conclusive of that fact on application for judgment of sale, even though the evidence introduced may show that the notice was insufficient.

APPEAL from the County Court of Livingston county; the Hon. C. F. H. CARRITHERS, Judge, presiding.

This is an application by the county treasurer and *ex officio* collector of Livingston county for a judgment of sale against the north-west quarter of the north-west quarter of section 28, town 26, range 8, in said county, owned by appellant as trustee of the estate of P. Stack, deceased, and returned delinquent for the non-payment of special assessments. Objections were made by appellant to the entry of judgment, all of which were overruled. To the action of the court in overruling such objections an exception was taken. Judgment of sale was rendered against the land, to which also appellant excepted. The present appeal is prosecuted from such judgment of sale.

THOMAS W. TIPTON, for appellant.

R. S. McILDUFF, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the trial before the county court of Livingston county the collector, petitioning for the sale of the land, offered in evidence the warrant, delinquent list, and accompanying affidavits, certificates and papers, together with the certificate of publication of the tax list, and the certificate of the treasurer of the Oliver and Corn Grove drainage district that the land in question was delinquent for a special assessment.

The appellant, objector below, offered in evidence all the proceedings for the levy of an additional special assessment by the commissioners of the Oliver and Corn Grove drainage district, together with the exhibits to said petition, also the order granting the prayer of said petition, and directing the commissioners of the district to make such additional assessment in lieu of a jury, also the oath of the commissioners and the assessment roll; the order made by the commissioners, confirming the assessment roll, and the order of the

court, confirming said assessment roll, in connection with which were also offered the affidavits and certificates, showing the posting, publication and mailing of notices. Certain oral testimony was also introduced in evidence.

The special assessment proceeding here under consideration was prosecuted under the act of May 29, 1879, "to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts." The sections of that act, under which the points made by the appellant arise, are chiefly sections 3, 19 and 37, as amended by the acts of 1881 and 1885. (2 Starr & Curt. Ann. Stat.—2d ed.—pp. 1502, 1503, 1511, 1519, 1520).

The record of the proceedings, introduced by the objector, showed that on January 7, 1903, a petition was filed in the county court of Livingston county by three persons, appointed by said court as commissioners of the Oliver and Corn Grove drainage district, asking the court to authorize an additional assessment to be made by them on the lands in said district, first, to clean out and repair the main ditch of said district where the same has filled in since first excavated, the cost of which was estimated at $4430.00, and second, to construct 4800 feet of covered drain in the upper part of the main ditch with profiles thereto attached, the cost of which was estimated at $1250.00, together with $1100.00 for surveyor's pay, court expenses, attorneys' fees, commissioners' fees, and treasurer's fees, amounting altogether to $6780.00. The petition was accompanied by itemized statements of accounts, made by the commissioners under oath, showing the money received by the district, and the manner in which they expended it on September 2, 1902, and from that date down to January 3, 1903.

On January 31, 1903, an order was entered by the court, granting the prayer of the petition and ordering that an additional assessment of $5680.00, being the amount above

specified after deducting $1100.00 for costs and expenses, be made upon the lands of said drainage district, and ordering that three persons therein named, to-wit, J. W. Walsh, J. R. Strawn and M. A. Freehill, commissioners of said district, make such additional assessment in lieu of a jury, and further ordering that the itemized statements of account, filed by the said commissioners on September 2, 1902, and January 3, 1903, be approved. The proceedings, as introduced, showed the publication, posting and mailing of a notice, stating the date of the filing of said petition, and its object, and the amount of the additional assessment required, and also stating "that at the January term, A. D. 1903, of the said county court, to-wit, on the 31st day of January, A. D. 1903, at the hour of one o'clock P. M. of said day, application will be made to the said county court for said order, at which time all persons interested may appear and contest the said petition, if they desire."

The record of the special assessment proceedings also showed the oath, taken by the commissioners of said district, to make the assessment of damages and benefits in favor of or against the lands in said district according to law. It also showed the assessment roll of the commissioners, from which it appeared that the sum of $308.00 was assessed against the above described land of the appellant. Attached to the assessment roll was a certificate by the commissioners, certifying that they had fixed on the 21st day of February, 1903, at the hour of one o'clock in the afternoon before said county court in the court house in Pontiac, Livingston county, "as the time and place when and where we will meet and attend to hear and consider any and all objections that may be made to said assessment roll aforesaid, and for the correction of said assessment, if deemed advisable."

On February 21, 1903, the commissioners returned to the county court their verdict and confirmation of said assessment roll, reciting therein that they had been appointed on January 31, 1903, by the county court to make and levy

said assessment, and had made the same, and had filed their assessment roll with the clerk of said court on February 9, 1903, and had given notice of said filing as required by law, and had met on February 21, 1903, at the hour and place aforesaid to hear objections, and further reciting that the court had found that due and proper notice had been given of said objections, and that they had heard the same, and the evidence offered, and had taken into consideration their own personal view of the land. On the same day, to-wit, February 21, 1903, the county court entered a judgment, confirming said assessment roll, and therein reciting that the commissioners had on that day come, and made proof of the filing on February 9, 1903, of their assessment of damages and benefits to the various tracts of land in said drainage district by reason of the additional assessment theretofore ordered on January 31, 1903, and made proof of the posting, publishing and mailing of notices according to law of the time and place of meeting for the correction of said assessment; and by said judgment of confirmation it was recited as follows: "And the court being fully advised in the premises doth find that due and proper notice has been given to all persons interested for the length of time and in the manner, required by law, of these proceedings and this application; and doth consider and order that the objections to the same be and they are hereby overruled, and that the said assessment roll and each and every entry thereon, and the proceedings of the said commissioners be and they are in all respects hereby confirmed and approved by the court, and spread upon the records of this court," etc.

Accompanying the proceedings in regard to the levy of the additional assessment, as introduced by the objector, is a notice by the commissioners that they had been appointed to make said additional assessment; that the assessment roll had been prepared and deposited in the office of the clerk of said county in Pontiac, and that the court had appointed February 21, 1903, at the hour of one o'clock in the after-

noon of said day at the county. court room in the court house in Pontiac "as the time and place where we shall meet for the correction of said assessment; at which time and place we will meet, and' any and all objections that may be presented to said assessment will be heard."

There was also introduced in evidence in connection with said notice the certificates and affidavits, showing the posting, publication and mailing of said notice.

This is an appeal, as will appear from the foregoing statements, from a judgment of sale of appellant's property made upon the application of the county collector. Accordingly, the proceeding is collateral to the original proceeding, in which judgment confirming the special assessment was entered. The only objections, now urged upon our attention by the appellant, are to the effect that the county court had no jurisdiction to grant the prayer of the petition of the commissioners of the district for an additional assessment, and no jurisdiction to confirm the assessment roll when made. These objections are to be considered in the light of the fact, that they are made in a collateral attack upon the judgment of confirmation, and are not made in a direct proceeding for the reversal of that judgment.

*First*—It is said that the county court acquired no jurisdiction to grant the prayer of the petition upon the alleged ground that the notice was not given ten days prior to the first day of the term of the court, at which the order granting the prayer of the petition was made; and upon the further alleged ground that no certificate of mailing notices was shown.

This objection involves a consideration of the section of the statute, under which the assessment was made. Section 37 of the Drainage act of May 29, 1879, as amended in 1885, provides that the commissioners may use money arising from the collection of assessments, or coming into their hands as such commissioners, for the purpose of constructing, or repairing, or maintaining any ditch, ditches,

217—15

drains, levee or levees within said district or outside of said district necessary for the protection of the lands and complete drainage of the same within such district: *"Provided, that * * * assessments* from time to time may be levied on the land within any district when it shall appear to the court that the previous assessment or assessments have been expended or are inadequate to complete such work, or are necessary for maintenance and repair, or when it shall become necessary for the construction of any additional work, or the completion of any work already commenced within any drainage district to insure the protection or drainage of the lands in said district, under the order and directions of the court * * * on the petition of the commissioners, accompanied by an itemized statement of accounts made by the commissioners under oath, showing the moneys received by the district and the manner in which they have been expended, together with plats, profiles of such additional work and estimated cost of the same; two weeks' previous notice of the time set for the hearing of said petition in the manner required by section 3 of this act, having been given. Upon the hearing of such petition the court may grant the prayer of the same, and with like proceedings and notice, as near as may be, as in cases of original assessments of damages and benefits under this act; and such additional assessment, or assessments, when made, shall have the same force and effect and be collected in the same manner as original assessments: *Provided,* that * * * in case the court so orders, the commissioners of said district may make any assessments of benefits, or damages and benefits, in lieu of a jury; and all the proceedings required of a jury in such cases by this act, shall be required of and observed by the commissioners as near as may be in making such assessments." (2 Starr & Curt. Ann. Stat.—2d ed.—pp. 1519, 1520). The validity of the provisions of this section, allowing the commissioners to make an assessment of benefits in lieu of a jury, has been sustained by this court, so far as they do not include assess-

ments for damages on account of property taken or damaged, (*Hosmer* v. *Hunt Drainage District,* 135 Ill. 51; *Briggs* v. *Union Drainage District,* 140 id. 53;) in which cases the provisions of the act in regard to assessments by commissioners, or by such a jury as is described in the act, have been held to be unconstitutional. (*Juvinall* v. *James-burg Drainage District,* 204 Ill. 106; *Wabash Railroad Co.* v. *Coon Run Drainage District,* 194 id. 310). It will be observed that by the terms of section 37 two weeks' previous notice of the time, set for the hearing of the petition, is to be given in the manner required by section 3 of the act, and that, upon the hearing of such petition, the court may grant the prayer thereof with like proceedings and notice, as near as may be, as in cases of original assessments of damages and benefits under the act.

A reference to section 3 of the act shows that the notice, there required to be given, is to be so given by posting notices at the door of the court house of the county or counties, in which the district is situated and in at least ten of the most public places in such proposed district, and also by publishing a copy thereof at least once a week for three successive weeks in some newspaper, published in the county from which the larger part of the said district is proposed to be formed, and that such notice shall state when and in what court such petition shall be filed, etc., and at what term of said court the petitioners will ask a hearing of said petition. The proviso in section 3 also provides that, if any of the land owners of·said district are non-residents of the county or counties in which the proposed district will lie, the petition shall be accompanied by an affidavit giving the names and places of residence of such non-residents if known, etc., and that the clerk shall send a copy of the notice aforesaid to each of said non-residents, whose residence is known, within three days after the first publication of the same, and that the certificate of the clerk or the affidavit of any other credible person, affixed to a copy of said notice, shall be suffi-

cient evidence of the posting, mailing and publication of said notices. Section 37 provides for the giving of two weeks' notice, whereas section 3 provides for the giving of a three weeks' notice. Of course section 3 does not apply to the case contemplated by section 37, as to the time during which the notice is to run, but only as to the mode of giving the notice.

If, under the circumstances of this case, it was proper to introduce in evidence the affidavits and certificates to show how the notice in question was given, then it cannot be said that the proof does not show a compliance with the statute, as set forth in said sections 37 and 3 construed together. The certificate of the publishers, attached to the notice, that application would be made to the court on the 31st day of January, 1903, for the order, authorizing the levy of the additional assessment, certifies that such notice was published in a certain weekly public newspaper, printed and published in said county, in every copy and impression thereof for three weeks successively of the issues commencing January 16, 1903, and ending January 23, 1903, the dates of the first and last papers containing the same. This certificate certainly shows that the notice, that the application would be made before the court on January 31, 1903, was published for two weeks before January 31, 1903. Although the certificate certifies that it was published three weeks, a publication of only two weeks was sufficient under section 37; and such publication was made. There is also an affidavit by one of the commissioners, that he posted a copy of the notice in question on the 16th day of January, 1903, in ten of the most public places in the Oliver and Corn Grove drainage district in said county, giving the names of such places. Inasmuch as these notices were posted on January 16, 1903, they were posted two weeks before January 31, 1903. There is also a certificate by the clerk of the county court of said county that, on the 13th day of January, 1903, he sent by mail a copy of the notice to each one of the parties, whose names appear in the affidavit thereto annexed. Counsel for appel-

lant says in his brief that "no affidavit was annexed, nor was there one on file." The proviso to section 3, as above quoted, (2 Starr & Curt. Ann. Stat.—2d ed.—pp. 1502, 1503,) provides that, if any of the land owners of the district are non-residents of the county, the petition shall be accompanied by an affidavit giving the names and places of residence of such non-residents, if known, and that the clerk shall send a copy of the notice to each of said non-residents, etc. The petition, filed in the case on January 7, 1903, is sworn to by the commissioners, and states the names and addresses of the property owners, and this statement shows that the residence of the appellant is in Delana, Illinois, and outside of the county of Livingston. Inasmuch as the petition contains a statement of the residences of the non-residents of the county and is sworn to, we think the provision of the statute that the petition should be accompanied by an affidavit, giving the names and places of residence of such non-residents, if known, was sufficiently complied with. The record of the special assessment proceedings also shows an affidavit by one Norton that, on January 14, 1903, he posted a copy of the notice that application would be made to the court on January 31, 1903, for authority to levy the additional assessment, at the north door of the court house in Pontiac. Therefore, proof was actually introduced, showing that two weeks' previous notice of the time set for the hearing of the petition was given, as required by section 3, by the posting of notices at the door of the court house, and in at least ten of the most public places in the district, and by publishing the same for two weeks in a newspaper published in Livingston county, and that notice was mailed to appellant, who was a non-resident of the county.

*Second*—Counsel for appellant alleges that the county court had no jurisdiction to confirm the assessment roll, upon the alleged ground that notice was not given ten days before the first day of the term, at which the assessment was confirmed, and upon the alleged ground that sufficient time

had not elapsed between the filing of the assessment roll and the confirmation thereof. The record of the special assessment proceeding shows that the assessment roll was filed on the 9th day of February, 1903, and the judgment confirming the same was entered on the 21st day of February, 1903. The record shows a certificate by the clerk of the county court of Livingston county, certifying that on February 9, 1903, he sent by mail, postage prepaid, a copy of the notice, that the court had appointed the 21st day of February, 1903, at the court house in Pontiac as the time and place where the commissioners would meet for the correction of said assessment, to each one of the parties, whose names appeared in the affidavit thereto annexed. There was an affidavit, annexed to the certificate of the county clerk made by himself, and showing that the appellant was a non-resident of the county. This was sufficient evidence that notice was mailed to the appellant on February 9, 1903. There is also an affidavit to the effect that such notice, at the request of the drainage commissioners of the district, was posted on February 9, 1903, at the north door of the court house at Pontiac. There was also an affidavit by the clerk of the county court that he posted said notice on the 11th day of February, 1903, at ten of the most public places in the district, giving the names and locations of the places. There is aso a certificate by the publisher of a weekly public newspaper in Pontiac, that said notice was published for two weeks successively in such paper in every copy and impression thereof, commencing February 11, 1903, and ending February 18, 1903, the dates of the first and last papers containing such notice.

The proofs thus introduced showed, that the notice of the time and place, where application would be made for the correction of the assessment roll, was given ten days before February 21, 1903. Section 37, as above quoted, provides that, when the court so orders, the commissioners of the district may make assessments in lieu of a jury and that "all the proceedings required of a jury in such cases by this act

shall be required of and observed by the commissioners as near as may be in making such assessments." Section 19 of the Drainage act provides that, "when the jury shall have completed their assessment of damages and benefits, they shall fix a time and place when and where they will attend, in case the jury was empaneled by the court in which the petition was filed, before the same court at a time fixed within any term, * * * for the correction of their assessment, and the jury shall give at least ten days' previous notice of such time and place, and object of such meeting by posting and publishing notices in the manner required in section 3 of the act to which this act is an amendment; the affidavit of any credible person or persons that he or they has or have posted such notice as herein required, and the certificate of the publishers of such newspaper, as to such publication, shall be sufficient evidence of such facts." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1511). The commissioners were required to give the same notice as the jury were required to give in case the assessment was made by a jury instead of being made by commissioners. By section 19 the jury were required to give ten days' previous notice by posting and publishing notices in the manner required by section 3 of the act. The notice required by section 19 is a ten days' notice, and it is required to be given only by posting and publishing, nothing being said about mailing any notice. The proofs introduced, therefore, went further than the statute required, because they showed that the notice was not only posted and published ten days before the day fixed, but that it was mailed ten days before the day fixed. It was not necessary that the notice should be given ten days before the first day of the term, because section 19 provides that the jury (or the commissioners) shall fix a time and place "before the same court at a time fixed within any term." As the time to be fixed may be within the term, it was not necessary that the notice should be given ten days before the first day of the term, but only ten days before the time fixed within the term.

In *Blake* v. *People,* 109 Ill. 504, this court held, in construing this section 19, that it was sufficient if the record showed the posting of notices and the publication of notices for more than ten days; and in that case it was said (p. 520) : "All objections, which could have been urged at the time of the confirmation of the assessment roll, and which were not then urged, must be considered as waived, and cannot be urged for the first time on application for sale of lands for a delinquent assessment. Such has been the repeated ruling of this court in cases of special assessments for the opening, repair and improvement of streets, and there is no difference in principle between those cases and the present." Section 34½ of the Drainage act (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1518,) provides as follows: "This act shall be liberally construed to promote the ditching, drainage and reclamation of wet or overflowed lands; and collection of assessments shall not be defeated by reason of any omission, imperfection or defect in the organization of any district, or in any proceedings occurring prior to the judgment of the court confirming the assessments of benefits and damages; but said judgment shall be conclusive that all prior proceedings were regular and according to law."

In *Calkins* v. *Spraker,* 26 Ill. App. 159, the Appellate Court, speaking through the late Mr. Justice BAKER, in construing section 19 said: "When the jury have completed their assessment, the only notices required to be given of the time and place objections to the damages and benefits assessed will be heard, are notices of at least ten days, by posting notices * * * and by publishing a copy thereof in a newspaper published in the county. Section 19 of the act of 1879 expressly and in terms limits the notices to be given to posted and published notices; and no sending or mailing of notices to non-resident land owners is required in that regard. There is a very essential difference in respect to the extent to which the provisions of section 3 of the statute is, by reference, incorporated into and becomes a part of

sections 13 and 19, respectively. In this case the notice given under section 3 was all that the statute required."

*Third*—It is to be observed, however, that the orders and judgments in this case are to be treated as conclusive evidence in this collateral proceeding that proper notices were given. Inasmuch as counsel introduced certificates and affidavits outside of the recitals of the judgment for the purpose of showing that proper notice was not given, we have considered the question as to whether or not proper notice was actually given under the proofs introduced. But the record of the special assessment proceeding does not show any bill of exceptions, and, therefore, does not show all the evidence, which may have been heard by the court upon the question of notice when the judgment of confirmation was entered. Consequently, it will be conclusively presumed that the evidence heard was sufficient to sustain the judgment of confirmation. (*Hosmer* v. *Hunt Drainage District,* 135 Ill. 51).

In the judgment, entered by the county court upon January 31, 1903, there is the following recital: "And the court having duly examined said proofs, finds that due and legal notice of filing of said petition was given as provided by law, more than two weeks before the 31st day of January, A. D. 1903, the same being the day set for the hearing of said petition; and further finds that the court has jurisdiction of the subject matter of said petition and all of the parties interested therein." The judgment of confirmation, entered on February 21, 1903, after reciting that the commissioners appeared and made proof of the filing of their assessment, provides as follows: "And make proof of the posting, publishing and mailing of notices, according to law, of the time and place of meeting for the correction of said assessment roll; and now in the presence of the court the said commissioners proceed to hear the evidence for and against the said objections, and after hearing and passing upon the same said drainage commissioners return herein their verdict and confirmation of said assessment roll, as the same was originally

made and filed herein. And the court being fully advised in
the premises, doth find, that due and proper notice has been
given to all persons interested, for the length of time and in
the manner required by law, of these proceedings and this
application; and doth consider and order that the objections
to the same be, and they are hereby overruled, and that the
said assessment roll, and each and every entry thereon, and
the proceedings of the said commissioners be, and they are in
all respects, hereby confirmed and approved by the court, and
spread upon the records of this court."

It will thus be observed that the judgment of confirma-
tion finds that legal proof was made of the posting, publish-
ing and mailing of the notices according to law. The recitals
in a judgment confirming a special assessment, that all the
requirements of the statute as to notice have been complied
with, and that due notice as required by law was given by
publication, are not overcome by a defective notice or cer-
tificate of publication found in the record. It will be pre-
sumed that the court acted upon sufficient evidence to sustain
its finding where the same is brought into question in a col-
lateral proceeding. (*Casey* v. *People,* 165 Ill. 49; *Illinois
Central Railroad Co.* v. *People,* 189 id. 119; *Young* v. *Peo-
ple,* 171 id. 299; *Reedy* v. *Camfield,* 159 id. 254). "Where
the court has found and recited that notice was duly given,
it has been held that the finding cannot be overcome by the
production of the publisher's certificate or affidavit showing
insufficient notice. * * * Such a finding, like any other
judicial determination, can never be contradicted, varied or
explained in a collateral proceeding by parol or other evi-
dence beyond or outside of the record itself. The question
must be tried by the record, and, while the finding may be
rebutted by other portions of the same record, it cannot be
overcome by other means." (*Illinois Central Railroad Co.*
v. *People, supra*). In *Thompson* v. *People,* 207 Ill. 334, it
was held that the lack of jurisdiction to enter judgment of

confirmation must appear upon the face of the record in order to furnish ground for collateral attack.

Inasmuch, therefore, as the county court, in the judgment of confirmation, found and recited that due notice was given, such finding of the court in the case at bar was not overcome by the evidence introduced, even though insufficient notice was shown thereby.

For the reasons above stated, we are of the opinion that the judgment of the county court was correct. Accordingly, such judgment is affirmed.  *Judgment affirmed.*