THE CACHE RIVER DRAINAGE DISTRICT, Appellee, *vs.* THE CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY, Appellant.

*Opinion filed October 26, 1912.*

1. DRAINAGE—*when an assessment of benefits to entire right of way is not objectionable.* An assessment of drainage benefits to a railroad right of way in the district as an entirety is not objectionable, even though a particular part of the right of way, by itself, may not be benefited, provided the benefits assessed do not exceed the benefits to the whole right of way in the district.

2. SAME—*commissioners' roll is prima facie evidence of benefits.* Upon the question whether the amount assessed against land for a drainage improvement exceeds the amount of benefits to the land, the commissioners' roll is, by statute, *prima facie* evidence for the commissioners and entitles them to judgment in accordance therewith, unless the *prima facie* case is overcome.

3. SAME—*what does not show that railroad right of way is assessed more than its proportionate share.* The mere fact that farm lands adjoining a railroad right of way are not assessed to exceed $3.08 per acre whereas no acre of the railroad right of way is assessed less than $41.66, does not, of itself, establish that the railroad right of way is assessed more than its proportionate share of the estimated cost.

4. SAME—*what is not a taking of a railroad right of way.*  A railroad right of way is subject to the right of drainage through a natural water-course and the company is bound to provide for the passage of water, and the fact that drainage commissioners. deepen the natural water-course under a trestle on the right of way and expect to reverse the direction of the flow of the water does not amount to a taking of the right of way or otherwise affect the railroad company's rights, so long as the burden imposed upon it by law is not increased.

5. SAME—*what is not an element of benefits to railroad right of way.*  In determining the amount of benefits to a railroad right of way from a drainage improvement it is proper to consider what will be of direct benefit to the railroad as property, such as decrease in cost of maintenance and operation; but the speculative benefit which may be derived by the company from an increase in passenger and freight traffic through the agricultural development of the land in the district cannot be considered.

6. SAME—*when the court should exclude testimony of witness.*  The answer of a witness, which, in connection with the question asked, implies that under certain circumstances the draining of a district might be of immeasurable benefit to a railroad company without regard to its effect upon the company's track, should be excluded from the consideration of the jury.

7. INSTRUCTIONS—*a party is not confined to mere general rules of law.*  In presenting instructions a party is not confined to mere general rules of law, but has a right to have the jury instructed in the law as applied to his particular case.

8. SAME—*when an instruction as to assessing benefits against railroad right of way is misleading.*  An instruction directing the jury to assess drainage benefits to a railroad right of way "in like manner" as benefits to land of private individuals is properly refused, as the words "in like manner," without some explanation, would be misleading and incorrect.

APPEAL from the County Court of Massac county; the Hon. W. F. SMITH, Judge, presiding.

HOMER T. DICK, and C. L. V. MULKEY, (E. H. SENEFF, of counsel,) for appellant.

S. A. VANKIRK, (GEORGE E. MARTIN, COURTNEY & HELM, and S. BARTLETT KERR, of counsel,) for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The county court of Massac county rendered a judgment confirming the verdict of a jury assessing benefits to the right of way of the Chicago and Eastern Illinois Railroad Company in the Cache River Drainage District, and the railroad company has appealed.

The commissioners' roll described the right of way as containing 17.36 miles and assessed it for benefits at $500 a mile, making a total of $8680. It was admitted on the trial that there were only 13.68 miles of the right of way in the district and the total amount of benefits assessed by the jury was $6840, being $500 a mile. The railroad company objected to the commissioners' roll because its assessment exceeded the benefits it would receive and also exceeded its proportionate share of the cost of the improvement. Henry Korte, a land owner, objected to the railroad company's assessment as lower than its proportionate share of the cost of the improvement. His attorneys were the attorneys for the drainage district.

The Cache River Drainage District comprises lands situated in the counties of Union, Johnson, Pope, Pulaski and Massac, and contains about 68,000 acres of land which was assessed for benefits, besides about seventy-five miles of public highways, and about thirty-seven miles of railroad belonging to the Illinois Central Railroad Company, the Chicago, Burlington and Quincy Railroad Company, the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, and the appellant. It includes all the lands of the Cache river basin, which extends from east to west through the district thirty miles between the Ozark hills on the north and the bluffs north of the Ohio river on the south, though the tortuous course of the water is much longer. The Cache river, which carries off the water from this basin, flows sluggishly through the district in a south-

westerly direction and leaves it at Ullin, on the western boundary, finally reaching the Ohio river above Cairo. This river has very little fall, the basin is covered with a series of ponds, lakes, sloughs and bayous, and in seasons of heavy rains the low lands are covered, to a depth of ten feet or more, with water which runs off slowly. The appellant's railroad has two branches through the district and is built on embankments, which there is evidence tending to show have never been submerged though the water has sometimes risen to within a few inches of the ties. Five and a half miles of its track is entirely above the water and is never disturbed by it. Prominent features of the proposed improvement of the district are the building of a levee at the east end to prevent the overflow waters from Big Bay creek from entering the district; the construction of what is called "Post creek cut-off" at a point near the center of the district, which will give an outlet for a part of the water to the Ohio river through a channel four miles long; and the construction of a cut-off at the western boundary of the district to improve the fall and channel of the river at that place.

The appellant contends that it is assessed $500 a mile for benefits for every mile of its track in the district, while it is admitted or established by the evidence that five and a half miles of its track receives no benefits at all. The verdict does not, however, find that each mile is benefited $500. It contains in separate items the description of the different portions of the appellant's track in various sections, followed by the number of miles in each portion but with no separate assessment against any portion. The number of miles of the various sections are added together, making 13.68, and the total amount of benefits ($6840) is then carried out against the whole mileage. This is $500 a mile, but no sum is assessed against any particular mile. The total benefits are extended against the whole right of way in the district. The assessment of

benefits to the right of way as an entirety is not objectionable though a particular part of the right of way, taken by itself, would not be benefited, provided the benefits assessed do not exceed the benefits to the whole right of way.

It is contended that the amount assessed against the appellant exceeds the amount of its benefits. On this question the commissioners' roll is made by the statute *prima facie* evidence for the commissioners, which entitled them to judgment in accordance with the assessment unless overcome by other evidence. Various witnesses for the appellant testified that the proposed improvement would not be any benefit to the appellant; other witnesses testified to the contrary. Witnesses testified about the character of the appellant's track, bridges and embankments; the time, character and extent of the floods; the height to which the water rose on the appellant's embankments and the effect of it; the nature of the improvement intended to be made and the effect it would produce. No amount of benefits was fixed by any witness except one. The commissioners' report fixed an amount and the appellant's witnesses fixed none, because they said there were no benefits. The evidence was conflicting, and since the judgment must be reversed for errors of law we express no opinion as to its weight.

It is also contended that the benefits assessed exceed the appellant's proportionate share of the estimated cost, and in this connection it is said no acre of farm land was assessed more than $3.08 an acre, and no acre of appellant's land, lying at the side of it and identically the same kind of land, is assessed less than $41.66 an acre, and it is asked, what basis is there, in law, for such gross discrimination? The error in the argument lies in the assumption that the two acres mentioned are identically the same kind of land. They were originally, but it scarcely seems to require argument to establish that a railroad track is not the same kind of land as the farm through which it is

built though the soil beneath it is the same. So, by taking the estimate of one of the commissioners who estimated the total benefits to the district at $4,000,000, the appellant's counsel arrive at the conclusion that the jury's assessment of the appellant's proportionate share of the cost indicates a total benefit to appellant's track of $136,800. The estimate of this witness was not, however, binding on anyone, and it is probable that the jury did not fully accept his judgment. On this question of the proportionate share of the cost, however, as on that of the amount of benefits, we express no opinion as to the weight of the evidence.

The appellant's track crosses Post creek on a trestle. The width of the stream was 286 feet, but the trestle has been filled in until now 100 feet is left for the width of the stream. In constructing the cut-off it is proposed to deepen the bed of the stream, which is now 22 feet below the appellant's rail, five feet. The appellant insists that this is a taking of a part of its right of way, and that it was error, in entering judgment confirming the verdict against its right of way, not to exclude that part of its right of way which crosses Post creek cut-off. Because no such objection was made in the court below it cannot be made here. Moreover, Post creek is a natural watercourse, the right of way is subject to the right of drainage through it, and the railroad company is bound to provide for the passage of the water. (*Chicago, Burlington and Quincy Railway Co. v. People*, 212 Ill. 103.) The commissioners have the right to keep the water-course open for the free flow of water, and in deepening it to increase its capacity they take nothing from the appellant but are in the exercise of a lawful right. The further fact that they expect to improve the water-course by changing the direction of the flow from the north to the south does not change the character of their right or affect the appellant so long as the burden imposed upon it by law is not in-

creased. No part of the appellant's right of way is taken and it loses no right which it previously had.

In the examination of W. N. Moyers, a witness for the appellee, after having testified as to the condition of the appellant's track, its height above the water, the effect of reducing the flood level, and many things in regard to the merits of the case, he was asked what other benefits there could be, and over objection was permitted to answer: sanitary, esthetic and commercial. On cross-examination he testified that there could be no sanitary benefit to the right of way, as a right of way, for railroad purposes; that the drainage would increase the agricultural output of that section of the country and the number of inhabitants that will ride on the railroad, perhaps. The appellant then moved the court to strike out and exclude from the jury the evidence of the witness as to sanitary, esthetic and commercial benefits. Afterward the appellant asked the court to give to the jury the following instruction, which was refused:

"You are instructed that in assessing benefits against said railroad company in this proceeding you have a right to consider only such benefits as will result to the company's right of way in said district for railroad benefits. Benefits to the corporation itself, as a transportation company, growing out of a possible increased productiveness of agricultural land within said district as a result of said improvement, which may lead to an increase of freight and passengers to said company, is not a proper element of the benefit to be considered by the jury in a case of this kind."

In the cross-examination of a witness for the appellant this question was permitted to be asked of him, over objection: "Isn't a drainage proposition, or a scheme that drains a district through which a railroad traverses, of an immeasurable benefit to a railroad, regardless of the fact as to whether it hurts or destroys the track or rail?" He answered, "That depends on the location."

In these rulings on the evidence and in refusing this instruction the court committed error. The indirect, uncertain and speculative benefit which may be derived from the increase of agricultural production and passenger traffic is not an element to be considered in assessing benefits to be derived from drainage. It is the direct benefit to the railroad as property, and not to the company in its business, which is to be considered. Whatever tends to decrease the expense of the maintenance of the track and railroad or the operation of trains is a legitimate subject for consideration, but not the possible increase of business arising from the general increase in productiveness and prosperity of the country and the community. The answer to the last question, alone, might have done no harm, but even that answer implies that under certain circumstances the draining of a district was an immense advantage to a railroad without regard to its effect on the track. This evidence, as well as that of the other witness, was permitted to remain in the record, and the jury could reasonably have supposed nothing else than that it was legitimately before them for their consideration. The court refused to tell them that they should not consider it.

The appellee's counsel contend that the substance of this instruction was given to the jury in other instructions, and cite instructions which told the jury, in substance, that in determining whether the right of way would be benefited they must determine whether or not it would be benefited for the particular uses to which it was applied, and another which told them that the benefits to be considered must be such as are capable of computation, and that benefits which were speculative, or so remote and indefinite as not to be capable of computation, were not benefits within the meaning of the law and should not be considered. These were all good instructions. They laid down general rules of law. But a party is not confined to mere general rules. He has a right to have the jury in-

structed in the law as applied to his particular case, and this is what the refused instruction would have done and no instruction given did. (*Carlin* v. *Grand Trunk Western Railway Co.* 243 Ill. 64.) Evidence had been allowed by the court to go to the jury, against the appellant's objection, from which the jury might infer the appellant would be benefited by the increased productiveness of the district and the additional freight and passenger business resulting from it. Was this benefit speculative and too remote and indefinite to be considered? The refused instruction would have answered that question. The others left the jury to guess.

A witness was asked if he had an opinion as to whether the assessment of the appellant was proper, and answered yes. He was permitted, over the appellant's objection, to give his opinion that the assessment of the commissioners was $392 a mile too low. That was a conclusion on the whole case which was for the jury to reach and the question was manifestly improper. The evidence in regard to water flowing over the appellant's track in the Belknap Drainage District was also improperly admitted.

The court refused the following instruction asked by the appellant:

"You are instructed that in assessing benefits against the property of a railroad company within said drainage district it is the duty of the jury to assess such benefits in like manner as benefits to the land of the private individuals."

In view of the appellant's argument here, this instruction would have been misleading without some explanation of the term "in like manner." The railroad track should not be assessed in like manner as farm land, if that means by the acre. The instruction was properly refused.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*