(No. 26739.—

JOHN H. TURLEY *et al.*, Appellants, *vs.* WILFRED ARNOLD *et al.*—(FRED SLOAN *et al.*, Appellees.)

*Opinion filed Sept. 24, 1943—Rehearing denied Nov. 11, 1943.*

WOOD, McNEAL, WARNER & GEHLBACH, for appellants.

VIRGIL C. LUTRELL, and HEBEL & HEBEL, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

The county court of Mercer county rendered a judgment confirming the verdict of a jury assessing benefits to owners of property in the Bay Island Drainage and Levee District No. 1. Plaintiffs, the commissioners of the district, have appealed and the defendants, thirteen owners of lands in the district, have prosecuted a cross appeal.

This proceeding was instituted under section 37 of the Levee Act. (Ill. Rev. Stat. 1941, chap. 42, par. 37.) August 12, 1940, plaintiffs filed their amended petition for an additional assessment for proposed improvements. An order was entered finding that the pleading was in proper form and the clerk of the county court was commanded to give notice of a hearing on the petition, pursuant to statute. August 24, 1940, eleven property owners appeared specially and moved to dismiss the amended petition on the ground that the court had no jurisdiction because the notice of hearing on the amended petition was insufficient and did not conform to statutory provisions. The motion was overruled, and the property owners thereupon filed a motion to dismiss the amended petition on the grounds, among others, that it (1) did not contain an itemized statement of accounts made by the commissioners, showing the moneys received by the district and the manner in which they had been expended; (2) that the purported itemized statement of accounts incorporated in the amended petition disclosed on its face it indicated only the financial condition of the district as of March 30, 1940; (3) that the amended petition sought the construction of a new ditch known as the "Heiser Slough Seepage Ditch," pur-

porting to be solely for the benefit of and for the purpose of giving more minute and complete drainage to a relatively small area of land within the district rather than being beneficial to the district as a whole, and (4) that the amended petition proposed improvements inherently separate and distinct from each other, rendering it impossible to intelligently plead to the merits of the pleading. The motion to dismiss was overruled. February 3, 1941, an order was entered continuing the hearing to March 3, 1941, and directing new notice. On the day last named thirteen property owners interposed objections to the amended petition. These objections were overruled and the cause was set for hearing on the question of whether the proposed drain or drains, ditch or ditches, or other works were necessary and would be useful for the drainage of lands proposed to be drained thereby for agricultural or sanitary purposes. Considerable evidence was introduced and an order was entered on July 8, 1941, granting the prayer of the amended petition and directing plaintiffs, as commissioners, to file an assessment roll on all the lands of the district for the improvements on or before August 25, 1941. The assessment roll was filed, as directed. Subsequently, defendants made a motion to dismiss the proceeding. This motion was denied. A jury was then impaneled. Plaintiffs offered in evidence the commissioners' assessment roll, and rested. This roll assessed the land from $1.53 to $2.03 an acre. Of the 139 units of land assessed in the district, 25 units were owned by defendants. Eleven witnesses testified in behalf of the defendants. Among them were three former commissioners of the district and one of the present commissioners, called as an adverse witness. The three former commissioners and other witnesses expressed the opinion that their lands would receive no benefits. On behalf of petitioners the present commissioners testified that the improvement would decrease the annual cost of pumping from 92 or 95 cents

an acre to 75 cents an acre, and otherwise benefit the whole district. Thirteen other witnesses then testified in behalf of plaintiffs, several stating the amount of benefits from the proposed improvement to each parcel of land owned by defendants. The record discloses no one of these witnesses testified to benefits to any tract of defendants in an amount less than the amount their land was assessed. The total number of acres shown in the assessment roll was 18,874.65. Defendants owned 5142.19 acres, and the total amount assessed against their property by the assessment roll was $8512.71, or an average of $1.65 per acre. The jury assessed the benefits to objectors' property at $497.18, an average of little better than 9 cents an acre. The assessment roll was confirmed as to all landowners not objecting. After objectors' evidence was closed they requested a view of the premises by the jury, and over the objection of petitioners this was allowed by the court, and after the conclusion of all the evidence the jury was taken over the lands within the district. Appellants appeal to this court, and objectors file a cross appeal.

The cross appeal will first receive consideration. The contention is that the county court should have allowed a motion to dismiss the amended petition for insufficient notice given by the plaintiffs. However, a second notice was issued by the county clerk which complied with the statute. Failure to give proper notice does not deprive the court of jurisdiction. In the event of a defective notice the cause may be continued for a new notice. (*Pratt* v. *Harris*, 295 Ill. 504; *Donner* v. *Board of Highway Commissioners*, 278 Ill. 189.) The objectors appeared and contested the petition for the new work under section 37, and therefore waived the question of the court's jurisdiction over their persons and any right to question the sufficiency of the notice of the proceeding. *England Pond Drainage District* v. *Hurst*, 344 Ill. 610.

Defendants also insist that the commissioners failed to comply with section 37 of the Levee Act in setting out an itemized statement of accounts made under oath, showing the money received by the district and the manner in which it had been expended, which is required to be filed with the petition for an additional assessment. This statement is not jurisdictional, and even if the contention were well founded it was waived by appearing and contesting the assessment. (*Sny Island Levee Drainage District* v. *Shaw,* 252 Ill. 142.) It is also urged the amended petition included matter which should have been brought in a separate proceeding for subdistricts under section 59 of the Levee Act. It is claimed the amended petition calls for three distinct and separate projects for minute and more complete drainage of part of the land in the district, which should be done under section 59.

It is true that projects to furnish more minute and complete drainage to certain localities within the district should be brought under section 59 rather than section 37 of the Levee Act. (*People ex rel. King* v. *Leonard,* 279 Ill. 159; *Sangamon and Drummer Drainage District* v. *Illinois Central Railroad Co.* 272 Ill. 374.) Section 37 of the Levee Act, however, provides that upon proper petition the court, after a hearing, may order an additional assessment levied upon the land within the district, when it shall become necessary for the construction of additional work or the completion of any work already commenced. We have held that a proceeding under section 37 requires the benefit shall be to the whole district, as is required by section 5 in petitioning for the organization of a district, and that this question must be determined by the court upon a preliminary hearing. *People ex rel. Fitton* v. *Ehler,* 338 Ill. 67; *Stack* v. *People ex rel. Talbott,* 217 Ill. 220; *People ex rel. King* v. *Leonard,* 279 Ill. 159.

In this case the objectors appeared after their motions had been denied, and introduced evidence for several days, and at the conclusion of the evidence upon this preliminary question the court made a finding that the work proposed to be done in the amended petition was beneficial to the whole district and entered a decree accordingly. The evidence upon this question has not been preserved. The question of the validity of the order of the court in finding the proposed work was beneficial for the whole district can only be raised on direct appeal, and cannot be again considered on a hearing had for confirmation of the assesment roll filed by the commissioners. *Commissioners of Savanna & York Drainage District v. DeLaVergne,* 298 Ill. 480; *People ex rel. King v. Leonard,* 279 Ill. 159.

The petition for additional work under section 37 of the Levee Act having been properly filed, and objections made thereto having been heard by the court, the latter had jurisdiction of the subject matter and the parties, and therefore the validity of this order cannot be assailed in a proceeding objecting to the amount of assessments as extended on the assessment roll. The cross appeal will therefore be denied.

Appellants urge the county court erred when it denied the motion to strike objectors' requests for view by the jury made at the close of objectors' evidence. In 1935 the General Assembly passed two acts relating to the view of premises by jury in proceedings under section 37 of the Levee Act. An amendment of June 28, 1935, (Session Laws 1935, p. 766,) changed section 17(b) of the Levee Act as it then existed only in respect to making appeals conform to the Civil Practice Act, but left the provision with respect to jury view the same as it had been heretofore, *viz.,* "And thereupon said jury shall proceed to select a foreman and a clerk from said jury, and in charge of such foreman shall, in case any party in interest shall so

request, proceed to examine the lands, railroads, streets, alleys and public highways to be affected by the proposed work. * * * and in finding such verdict they shall take into consideration their view of the premises as evidence (if such view shall have been requested by any party in interest) and consider it with the other testimony offered in the case and allowed by the court." The second act, approved July 3, 1935, (Laws 1935, p. 756,) amending section 17(b), provides the jury "shall in case any party in interest, who has filed an answer or a written request for examination of the premises in such proceedings prior to such hearing, shall so request, proceed to examine the lands, railroads, streets, alleys and public highways to be affected by the proposed work. * * * and in finding such verdict they shall take into consideration their view of the premises as evidence (if such view shall have been requested by any party in interest who has filed an answer or a written request in such proceeding prior to such hearing) and consider it with the other testimony offered in the case and allowed by the court."

Appellants contend the act of June 28, 1935, was repealed by implication by the act of July 3, 1935, and invoke the familiar principle that the revision of a subject by a later statute evinces a legislative intention to substitute its intention for an earlier law upon the subject. (*Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 Il. 425.) The act as amended June 28, 1935, left in force the statute as it existed before that date that a view by the jury was authorized by "any party in interest" without a written request. By the amendment of July 3, 1935, this provision was limited by providing a jury view was available to any party in interest "who has filed an answer or a written request for examination of the premises in such proceeding prior to such hearing." The later amendment differs from the former in that (1) a written request by a party in interest is required; and (2) the

written request must be made before the hearing has commenced. The motion in this case was not made until the objectors had closed their evidence in chief and appellants had made a motion for a directed verdict. The later act is repugnant to the former act in the two respects above specified. If inconsistent acts are passed at different times the last enacted statute controls. *People ex rel. Hinds* v. *Baltimore and Ohio Southwestern Railroad Co.* 366 Ill. 318.

Appellees interpret section 17(b), as amended, as referring to two classes of parties in interest, *viz.,* owners who have filed an answer in the cause; and, secondly, owners who have not answered but who have, prior to the hearing, requested the jury to view the premises before returning a verdict. The assessment roll, in the first instance, is deemed correct and is sufficient to make a *prima facie* case, (*Freesen* v. *Scott County Drainage and Levee District,* 283 Ill. 536,) and it must be confirmed unless there is evidence to the contrary. (*People ex rel. Freeman* v. *Whitesell,* 262 Ill. 387.) The correctness of the assessment of non-objecting land owners cannot be questioned unless objections have been made and an issue raised as to such assessment by other land owners that the non-objecting owners' land has been assessed too low, of which objection the latter must have notice. *People ex rel. Whitlock* v. *Green,* 242 Ill. 455.

In any event the demand for a jury must be made prior to hearing by a party in interest who has filed an answer or made a written demand for a jury. The provision with respect to the time of filing a written request applies with equal force to all parties in interest requesting a view by the jury. The manifest intent of section 17(b), as amended, is to limit a view by the jury to owners who have filed objections, or to those who are in a position to offer evidence, and to the petitioners, when a written request is made before hearing. The position of the ap-

pellees in this respect is untenable, and the trial judge was without authority to permit a view by the jury when sought by appellees after the conclusion of their evidence, without having made a request in writing therefor prior to the commencement of the trial. It is claimed by appellees this was harmless error, but the court gave an instruction that the view of the land in the district by the jury, and its personal inspection thereof, was a part of the evidence in the case and could be considered in addition to and in connection with the other testimony in the case. It is our conclusion that the court, in allowing a view by the jury without complying with the statute, gave appellees the benefit of additional evidence, which necessarily constituted error.

Appellants also object to the concluding part of an instruction pertaining to what constituted benefits, *viz.,*— "Benefits which will be common to all the lands in the district and which will not affect the market value of the lands in question, you should not consider." The evidence shows the proposed work would reduce the cost of pumping from 20 to 25 cents per acre per year. We held in *Cache River Drainage District* v. *Chicago and Eastern Illinois Railroad Co.* 255 Ill. 398, that "whatever tends to decrease the expense of the maintenance of the track and railroad or the operation of trains is a legitimate subject for consideration," in arriving at whether there had been a benefit. So here it must be apparent if there was a uniform reduction in pumping costs on every acre of the land within the district it was a benefit which was applied to all of the land, and was proper to be taken into consideration.

Appellees contend, however, that the limitation in the instruction to common benefits which do not affect the market value cures the vice in this instruction. But this overlooks the fact that a benefit in the way of convenience, or reducing operating expenses, or carrying off

of the water more rapidly may not necessarily be reflected in market value, but still may have a direct beneficial effect upon the land. The question of benefits in a drainage assessment does not involve the same elements as in an eminent domain proceeding, where the land is taken and the owner is not only entitled to receive the market value of the land taken but also the damages to land not taken to make him whole, in which case benefits common to the entire community cannot be shown to reduce the injury to land not taken. · The cases cited by appellee on this question are not in point. The primary purpose of a drainage assessment is to benefit the land for agricultural purposes, and the question of market value is incidental. The giving of such an instruction has a tendency to cause the jury to speculate as to the effect of the improvement upon sales rather than the benefit to be derived for agricultural purposes. It was error to give this instruction.

The court also gave on behalf of appellees the following instruction: "The court instructs the jury that an owner of property is entitled to enjoy it with all the natural advantages as are derived from its location and situation and is under no obligation to assist the owner of the lower tract of land to get rid of water flowing onto the latter's land." This is a correct exposition of the law of dominant and servient owners regarding the flowage of water over lands in their natural state. However, it must be remembered that one of the purposes of a drainage district is to overcome natural conditions, including the common law right as to dominant and servient lands. The rights of the land owners within the district are subject to the provisions of the statute if they take advantage of the drainage afforded by such district. In *People ex rel. Caldwell* v. *Commissioners of Wild Cat Drainage District,* 181 Ill. 177, where the rights of dominant owners were asserted in connecting their drain to certain other drain-

age ditches, the court said: "The section of the statute referred to has been considered by this court in numerous cases of this character, and it has been held that while the owner of the dominant heritage has the right to collect the waters naturally flowing from his land over the servient heritage into ditches and drains and thus to discharge them, yet when he connects his ditches with the ditches dug by the district the statute takes effect, and he must be held to have voluntarily applied to have his lands included within the district. The mere fact that these relators had the legal right to have the waters from their lands flow off over the lands below them lying within the drainage district gave them no right to connect their drains with the artificial drains of the district without subjecting themselves to the conditions imposed by the statute." The same principle is announced in *Binder* v. *Langhorst,* 234 Ill. 583.

In the case before us the general purposes intended were: (1) to increase the capacity of the main ditch so as to keep the pumps in constant operation; (2) to permit sufficient flow of water to remove an ordinary rainfall from the land in time to prevent serious crop damage; (3) the cut-off ditch was also for the purpose of getting the water to the pumping station more rapidly, and thus keep the pumps in constant operation until the water was reduced to the desired level; and (4) the ditch was to complete work contemplated by the original scheme but never completed. The entire plan had the effect of accelerating the flow of the water and pumping it more rapidly from the land at a lesser cost, and giving all land owners the benefits for which assessments had been made. All of the land owners who were included in the district, and who accepted these benefits, relinquished to that extent any common-law right of dominant flowage over that of the land lying below them by connecting with the ditches

of the district. While it is true the principle might have application as to water normally flowing over the surface of a higher tract to a lower tract, and not attached to the drains of the district, yet when the upper and lower land owners unite in forming a district for obtaining the benefits to be derived from the removal of water by means of drains or levees the principle has no application, for the simple reason the parties have agreed to adopt the drainage system provided by statute in lieu of the rights at common law. The case of *People ex rel. Mann* v. *Allen,* 330 Ill. 433, has no application because the factual situation was such that the dominant heritage had never been legally subjected to the requirements of the drainage statute considered in that case, and thus had not elected to be bound by the statute instead of the common law. This instruction, if not absolutely erroneous, could have no other effect than to confuse the jury and should not have been given.

It is also urged the court improperly admitted testimony to the effect the objectors' land would receive no benefit from the improvements authorized by the preliminary order of the court, and counsel take the position that the finding of the court in its preliminary decree conclusively determines that all of the land within the district will be benefited, and that evidence cannot be received to show an absence of benefit. The statute (Ill. Rev. Stat. 1941, chap. 42, par. 20,) provides that the jury shall pass upon the benefits and damages to the land owners and make out their verdict, in which shall be set down the names of the owners, the description of the premises, the number of acres, the amount of benefits assessed, if any, and the amount of damages, if any, against each tract. While we may assume no land is included within the drainage district unless it is benefited thereby, the benefit may be very small, and it is the object of the statute that the jury fix the amount of benefit to each owner and find

the damages suffered, if any, so it may be when the latter is paid or offset the owner will receive as much or more damages than the benefits assessed. The land owner undoubtedly has the right to contest the amount of the assessment or that other owners are assessed too low. While we do not approve of the general interrogation as to whether land has received no benefit by the proposed work, yet when a land owner has described the location of his premises and the manner in which the drains or other work affect him, or any injury which he may receive by locating them upon his premises, or by burdening him with excess water of others, it is within the reasonable discretion of the trial judge, after all of the circumstances have been enumerated, to permit the witness to fix the amount of his benefit or damage. If, after all matters including damages are taken into consideration, he has no net benefit at all, we see nothing in the statute to prevent the witness from so stating.

While some of the questions put to the witnesses of appellees may have called for a conclusion or opinion, without sufficient narration of the facts and surrounding conditions, yet the jury did not follow this testimony in whole, as it found some benefit to every tract, and if this objection of appellants were the only error complained of we would not disturb the judgment of the county court. The other errors pointed out are, however, substantial, and constituted error, and consequently the judgment of the county court of Mercer county must be reversed and the cause remanded, with directions to proceed in a manner not inconsistent with the views expressed herein.

*Reversed and remanded, with directions.*