THE COMMISSIONERS OF SNY ISLAND LEVEE DRAINAGE DISTRICT, Defendants in Error, *vs.* H. T. SHAW *et al.* Plaintiffs in Error.

*Opinion filed December 21, 1911.*

1. DRAINAGE—*report of probable amount of benefits, required by section 9 of the Levee act, is not conclusive.* The report of the probable aggregate amount of benefits, which is required by section 9 of the Levee act, is a preliminary report and is merely advisory to the court, and is not conclusive of the amount which may ever be raised on the lands of the district by special assessment.

2. SAME—*limitation on amount of special assessment in drainage districts.* The only limitation found in the statute or constitution upon the amount that may be raised by special assessment against the lands of the district is that the amount raised must not exceed the benefits, and the assessment must be spread in such a way that no land will be burdened with more than its proportionate share of the cost of the improvement.

3. SAME—*extent to which assessment is limited by report as to aggregate amount of benefits.* The aggregate amount of benefits which the commissioners are required to report under clause 3 of paragraph 7 of section 9 of the Levee act means those which will accrue to the lands of the district from the repairing or completion of work theretofore constructed under any law of the State, and the limit on the assessment, by such report, applies only to such work.

4. SAME—*district organized under the Levee act is not limited to repairing or completing the work theretofore done.* A drainage district organized under the Levee act of 1879 takes its life and powers from the statute and is not limited to the repairing and completion of the work theretofore done but is authorized and required to furnish drainage for the entire district, even though, in order to perform its full duty, it may have to construct improvements not contemplated when the preliminary report was made, before the district was organized.

5. SAME—*legislature has power to authorize additional assessment upon petition of the commissioners.* Since the amendment of the constitution in 1878 it rests within the discretion of the legislature to determine whether additional assessments in drainage districts shall be levied upon the initiative of the land owners of the district or the commissioners, and hence the provision of section 37 of the Levee act authorizing such additional assessment on petition of the commissioners is not invalid.

6. SAME—*objection to the sufficiency of itemized statement of commissioners comes too late on appeal.*  Where no objection to the sufficiency of the itemized statement of accounts filed with the petition of drainage commissioners for an additional assessment is made in the county court in any way, the objection cannot be raised in a proceeding to review the judgment confirming the assessment, as the filing of such statement is not jurisdictional.

7. SAME—*section 44 of the Levee act, concerning petition to abandon an assessment proceeding, construed.*  Section 44 of the Levee act, concerning the filing of a petition to abandon a proceeding to levy an assessment before the contract for the proposed work shall have been let, applies only to such orders and proceedings as are made and take place before the contract is let for the construction of the original work provided for at the time of the organization of the district, and not to assessments to be levied for additional work necessary to drain lands not sufficiently drained by the original system or to carry out the original plans.

8. SAME—*provisions of section 37 of Levee act are within the title of the general act.*  The title of the Levee act as originally passed stands for the entire act and each section thereof, and for the several amendments which have been passed as independent sections or added by way of amendment to the original sections, and such title is broad enough to include the various provisions of section 37 of such act as amended, as well as the subjects of its other sections.

9. SAME—*section 37 of Levee act does not provide for assessment without notice.*  Section 37 of the Levee act, as amended in 1909, does not provide for an assessment without notice to the land owners, as it expressly provides for two weeks' notice in conformity to the provisions of section 3 "of this act," which means section 3 of the act of which such section 37, as amended, is a part.

10. SAME—*an objection that petition does not give names of all land owners cannot be first raised on appeal.*  Section 37 of the Levee act, as amended, does not expressly require a petition for an additional assessment to give the names of all the land owners of the district, and even though the requirement may be necessary under section 2 of the act, yet an objection that the petition is insufficient in that respect cannot be raised for the first time in a court of review.

11. SAME—*affidavit of non-residence in a drainage assessment proceeding may be amended.*  An affidavit, filed with the petition for an additional drainage assessment, which states that there are certain unknown land owners, and that the affiant, upon diligent inquiry, was unable to ascertain who they were, may be amended

by leave of court, under section 4 of the Levee act, to show the fact that the affiant, upon diligent inquiry, was unable to ascertain the residence of the said non-resident land owners.

12. Same—*a party not affected by a defective affidavit of non-residence cannot complain thereof.* Sections 60 and 61 of the Levee act provide a method whereby non-residents who have not been properly served by publication or who have not entered their appearance prior to confirmation may subsequently be brought into court and made parties, and where no non-resident land owner objects to the sufficiency of the affidavit of non-residence the other land owners cannot object for him in a court of review.

13. Same—*general appearance waives a defective notice.* Defects in the notice given by drainage commissioners for the hearing before the jury upon the question of benefits are waived by all land owners who appear and are heard upon that question.

14. Same—*parties not injured by commissioners' amendment of roll cannot complain.* The fact that the drainage commissioners, by leave of court, amended the roll of assessments by adding thereto certain omitted property and by assessing benefits to the highways of the district, furnishes no ground for complaint by the land owners generally, where the owners of the lands so added, and the commissioners of highways, do not complain.

15. Same—*the assessment roll is admissible and makes a prima facie case unless overcome.* The provision of the Levee act that the roll of assessments of the commissioners shall make a *prima facie* case implies that such roll may be admitted in evidence and when so admitted will authorize a verdict confirming the assessment as made, unless the *prima facie* case is overcome by the objecting land owners; and while it is not necessary for the commissioners to testify, in the first instance, as to the basis of the assessment, it is not ground for reversing the judgment of confirmation that they were allowed to so testify when the assessment roll was admitted.

16. Same—*what does not render assessment roll inadmissible.* The fact that the commissioners' roll of assessments also contained an estimate of the damages does not render the roll inadmissible, where the jury are instructed not to consider that part of the roll, but that in making up their finding upon the question of damages they shall be governed by the evidence submitted to them on that question other than the roll of assessments.

Writ of Error to the County Court of Pike county; the Hon. Paul F. Grote, Judge, presiding.

This was a petition filed by the commissioners of Sny Island Levee Drainage District, under the provisions of section 37 of the Levee act, to levy an assessment of $250,-000 to provide funds with which to straighten and deepen the main channel of said drainage district. A large number of the land owners of the district appeared and filed objections to the assessment and its confirmation. The petition was amended and the proposed assessment was reduced in amount. The objections were overruled and an assessment of $160,000 was spread upon the lands of the district and confirmed, and the objectors have sued out this writ of error to review said judgment of confirmation.

The Sny Island Levee Drainage District was organized in 1880 for the purpose of draining and protecting from overflow about 110,000 acres of land situated in Adams, Pike and Calhoun counties and lying between the Mississippi river and the bluffs on the east. Through this territory there runs a natural channel, which leaves the river near Quincy and after traversing the lands of the district for about fifty miles returns to the river. This channel was adopted at the time of the organization of the district and now is the main channel of the district, and is commonly called the Sny Carte, and this is the channel proposed to be straightened and deepened. Prior to 1880 these lands had been organized into a drainage district under the act of 1871, and a levee had been projected and in part completed from the river near the head of the Sny Carte, and on its east bank, to the river near the mouth of the Sny Carte,— in all about fifty miles in length. After this court, in *Updike* v. *Wright,* 81 Ill. 49, and *Webster* v. *Levee Comrs.* (unreported,) had held that a levee along a river as an independent work was unauthorized by the statute then in force or by the constitution, and after the amendment of section 31 of article 4 of the constitution had been adopted in 1878 and the Levee act of 1879 had been passed, the Sny Island Levee Drainage District was organized under

252—10

the act of 1879. It was doubtless intended by its projectors that the Sny Island Levee Drainage District should take the place of the old district and complete and maintain the work which the old district had commenced but by reason of its illegality was unable to complete and maintain,—that is, levee the Sny Carte on its east bank from its head to its mouth and thereby shut out from the district the over-flow of the Mississippi river,—and the completion of said levee and the improvement of the Sny Carte represent sub-stantially the work done in the district thus far. From the organization of the district until the present petition was filed, assessments aggregating $472,000 have been levied upon the lands of the district. In addition to this an an-nual assessment for repairs of $19,000 has been levied, and the general government at one time appropriated $50,000 with which to repair and maintain the levee. It appears, therefore, that at least three-quarters of a million dollars have been used in the district since its organization. As a result of this expenditure the lands of the district have been greatly increased in value and are now worth many mil-lions of dollars. It appears a number of creeks which have extensive watersheds outside of the district flow into the district from the east and empty their waters into the Sny Carte, and the waters of the river on the north having been shut out of the old channel of the Sny Carte by a levee at that point and its current thereby largely destroyed, the silt and debris brought into the Sny Carte from the said creeks have greatly reduced its size, and it was represented to the court in the petition that unless the Sny Carte was straightened and deepened the lands of the district would be greatly damaged, and that at the time the petition was filed a considerable portion of the lands of the district, by reason of the choking up of the main channel of the dis-trict, were without sufficient drainage. It also was repre-sented that the district was without funds to pay for the work of straightening and deepening the Sny Carte and

that it was necessary to levy an assessment for that purpose. In brief, this was the situation of the district at the time the petition was filed.

Numerous questions have been raised upon this record, which is voluminous, and we will take them up in the order in which counsel have considered them in their respective briefs and dispose of them, or such of them as we deem necessary for the proper disposition of this writ of error.

W. E. WILLIAMS, A. CLAY WILLIAMS, and FRANK J. PENICK, for plaintiffs in error.

ANDERSON & MATTHEWS, and WILLLIAM MUMFORD, for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

*First*—Section 9 of the Levee act (Hurd's Stat. 1909, chap. 42, p. 859,) requires the commissioners, immediately after their appointment, to examine all the lands proposed to be drained or protected, and in case the prayer of the petition is for the purpose of repairing and maintaining a levee or levees, ditch or ditches, theretofore constructed under any law of this State, to report to the court what lands will be benefited thereby and the probable aggregate amount of such benefits. The commissioners, in accordance with the mandate of the statute, reported the probable aggregate amount of benefits to the lands of the district from the repairing and maintaining of the levee or levees, ditch or ditches, theretofore constructed was the sum of $500,000, and it is said that finding is binding upon the district, and that no greater sum than $500,000 can be raised in the district by special assessment with which to pay for improvements, regardless of the amount of actual benefits which would accrue to the lands of the district from the improvement, and as it appears that $472,000 has already been raised by special assessment in the district, this assessment

is excessive by $132,000 and that it cannot be sustained. The report required by section 9 is a preliminary report and is merely advisory to the court, and is not, we think, conclusive of the amount that may be raised by special assessment in the district. In *Michigan Central Railroad Co.* v. *Spring Creek Drainage District,* 215 Ill. 501, in speaking of the legal effect of the report required to be made under section 9, it was said (p. 504) : "This report is in no way conclusive as to any of the matters contained in it." We think this must necessarily be true, as at the time the report is made the district is not organized and may never be organized, and the report as to what lands will be benefited and the probable aggregate amount of such benefits is made by the commissioners to the court in order that the court may be advised upon the question whether the district should be organized, and is not made for the purpose of fixing benefits as a basis for future assessments. The only limitation upon the amount that may be raised by special assessment against the lands of the district found in the statute or constitution is that the amount raised must not exceed the benefits, and that they must be spread in such a way that no land will be burdened with a greater amount than its proportionate share of the cost of the improvement. It is clear that by clause 3 of paragraph 7 of section 9 of the Levee act, by virtue of which the finding was made by the commissioners, the assessment is limited by the probable aggregate amount of benefits which will accrue to the lands of the district from the repairing or completion of work theretofore constructed under any law of this State, (*Blake* v. *People,* 109 Ill. 504,) and must be held to apply here only to the benefits to accrue to the lands of the district by the repairing or completion of the levee or levees constructed by the old district to confine the waters of the Sny Carte. The district, however, as organized was not limited to that improvement, but it takes its life and chartered powers from the statute, (*People* v. *Lease,*

248 Ill. 187,) and it is not only authorized but is required to furnish drainage to the entire district. (*Binder* v. *Langhorst,* 234 Ill. 583.) In order to perform its full duty to all the lands in the district it may be required to construct improvements not contemplated at the time the preliminary report was made, before the district was formed. To hold that a district is concluded as to the amount which it can lawfully raise by special assessment by the amount found as the probable aggregate amount of benefits by the commissioners in the preliminary report required to be made by section 9, would be in many instances to so tie the hands of the district as to render its organization futile and abortive. This was an additional assessment made to pay for work not contemplated at the time the district was organized, and is not controlled by the decision in *Morgan Creek Drainage District* v. *Hawley,* 240 Ill. 123. Our conclusion is that the district was not limited in the amount it might raise by special assessment by the finding of the commissioners that the probable aggregate amount of the benefits was $500,000.

*Second*—It is next contended that the commissioners were powerless to file a petition to levy this assessment, and that in no event could it be levied except upon the petition of a majority of the land owners representing one-third in area of the lands of the district.

Section 37 of the Levee act, in part, is as follows: "And assessments from time to time may be levied on the land within any district when it shall appear to the court that the previous assessment or assessments have been expended or are inadequate to complete such work, or are necessary for maintenance or repair, or when it shall become necessary for the construction of additional work, or the completion of any work already commenced within any drainage district to insure the protection or drainage of lands in said district, under the direction and order of court, or to pay obligations incurred for the curren/

penses of said district or in the keeping in repair and protection of the work of such district, on a petition of a majority of the land owners within said district who are of lawful age and represent at least one-third in area of such lands, or on the petition·of the commissioners, accompanied by an itemized statement of accounts made by the commissioners under oath, showing the moneys received by the district and the manner in which they have been expended, together with the plats and profiles of such additional work and estimated cost of the same."

It is clear from the language of said section that it was the intention of the legislature that an additional assessment or assessments might be levied upon the lands of a drainage district organized under the Levee act, upon either the petition of a majority of the land owners representing one-third of the lands of the district or the commissioners, when it was made to appear to the court that the moneys theretofore raised by assessment had been expended or were inadequate or were not sufficient for maintenance or repairs, or where it was necessary that more money be raised to pay for additional work or for the completion of work already commenced, and unless it can be said that the legislature is powerless to authorize an additional assessment or assessments to be levied upon the petition of the commissioners, this contention of the plaintiffs in error cannot be sustained. In *Fountain Head Drainage District* v. *Wright,* 228 Ill. 208, the assessment was levied upon the petition of the commissioners and approved, and in *Binder* v. *Langhorst, supra,* it was held in a proper case the commissioners might be coerced by *mandamus* to levy an additional assessment or assessments with which to furnish complete drainage to the district. Since the amendment to the constitution in 1878 it rests within the discretion of the legislature to determine whether additional assessments ll be levied upon the initiative of the commissioners or nd owners of the district. (*Blake* v. *People, supra;*

*Kilgour* v. *Drainage Comrs.* 111 Ill. 342; *Huston* v. *Clark,* 112 id. 344; *Owners of Lands* v. *People,* 113 id. 296.) The argument of the plaintiffs in error that an assessment cannot be levied upon the lands of a district other than upon the application of the land owners of the district, based upon *Updike* v. *Wright, supra,* is without force, as the constitutional amendment was adopted with the obvious purpose of meeting the decision in that case. Our conclusion is that this assessment was properly levied upon the petition of the commissioners.

We are also of the opinion that the contention that the itemized statement of accounts filed with the petition by the commissioners is insufficient to give the court jurisdiction to levy this assessment cannot be sustained. The sufficiency of the statement was not challenged in the court below by motion or objection and the filing of said statement is not jurisdictional. Had the sufficiency of the statement been challenged in the court below and been found to be insufficient it could have been corrected by amendment, and the land owners of the district cannot now for the first time raise the question of the insufficiency of the itemized statement filed by the commissioners with their report. *Fountain Head Drainage District* v. *Wright, supra; Lovell* v. *Sny Island Drainage District,* 159 Ill. 188; *Spring Creek Drainage District* v. *Elgin, Joliet and Eastern Railway Co.* 249 id. 260.

*Third*—After the commissioners had filed their roll of assessment of benefits and damages, and before a jury was empaneled to make the assessment, a petition was filed, under section 44 of the Levee act, asking that the proceeding to levy this assessment be abandoned. The commissioners and certain land owners of the district made a motion to strike the petition from the files, which motion was allowed and the petition was stricken, and the action of the court in striking the petition to abandon has been assigned as error. Section 44 provides that if, at any time before the

contract for the construction of the proposed work shall
have been let, a petition shall be presented to the county
court to abandon the work, signed by not less than two-
thirds in number of all the land owners assessed for bene-
fits in the district to which the petitioners belong, whose
aggregate assessment amounts to not less than one-half the
cost of the proposed work, and all debts and expenses in-
curred up to the time of the filing of the petition have been
paid, the court shall enter an order upon its records grant-
ing the prayer of said petitioners upon the conditions speci-
fied in that section of the statute. If it be conceded that the
petition here was in proper form and that it was signed by
the requisite number of land owners, still we do not think
the court erred in striking the petition from the files. It
was but asking the court to undo what it had just deter-
mined to do,—that is, order the levy of said assessment,—
and amounted to no more than a petition for a rehearing
or a motion for a new trial, and no sufficient reason was
shown why the prayer of said petition should have been
granted.

There is another sufficient reason why the court did not
err in striking the petition to abandon from the files, which
is, that section 44 does not apply to every order of the
court providing for the levy of an assessment upon the
lands of the district, but only applies to such orders and
proceedings as are made and take place before the contract
is let for the construction of the original system of drain-
age provided for at the time of the organization of the
district, and does not apply to assessments levied for addi-
tional work to be done in the district to drain lands in the
district which are not sufficiently drained by the original
system, or for additional work, or to complete work being
constructed in accordance with the original plans adopted
for drainage at the time of the organization of the district.

The scope and office of section 44 were before this court
in *Soran* v. *Union Drainage District,* 215 Ill. 212, where

a sub-district was sought to be abandoned and a petition to abandon was stricken from the files. In that case, on page 214, it was said: "The appellants claim that under the provisions of this section, upon the filing of the proper petition to abandon, the court had no discretion in the matter but should have dismissed the petition. We do not think this contention is sound. Section 44 is one of seventy-four sections composing the Drainage act of May 29, 1879. This act provides the successive steps for the establishing of a complete system of drainage, including the organization of the district, the appointment of the commissioners, the levy of the tax, the letting of the contract, etc. Section 44 provides a method of abandoning the work before the contract is let. The contract referred to in the section is the contract for the original ditch or system of drainage. It does not refer to additional work in order to drain lands which are not sufficiently drained by the original system. Section 59, before being amended, provided for the construction of additional ditches after the original assessment had been made, in order to afford complete drainage to lands not sufficiently drained under the original profiles, plans and specifications. If this petition for additional drainage had been filed before the original contract had been let another question would be presented, but as the original contract had been let before the petition for additional drainage was filed, section 44 did not apply."

The court did not err in striking the petition from the files.

*Fourth*—It is further contended that section 37 of the Levee act is unconstitutional, first, because that section, as amended, contains more than one subject, which subjects are not expressed in its title; second, because that section does not provide for notice to the land owners of an assessment levied by virtue of its provisions; and third, because that section provides for the levy and assessment

upon lands of the district upon the petition of the commissioners, and thereby ignores the rights of the land owners and deprives the land owners of the district of the right to say whether their land shall be assessed.

(1) The section now under consideration was a part of the original act of 1879, which contained seventy-four sections. This particular section never had a title as it was originally passed or as it has since been amended. The title of the act as originally passed stands for the entire act and each section thereof, and for the several amendments which have been passed as independent sections or added by way of amendments to the original sections, and if the title of the original act is broad enough to cover the act as passed and the subjects which have been carried into the act by amendment, then its title is not incomplete and in conflict with section 13 of article 4 of the constitution, which provides that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title of the original act is, "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts." That title is broad enough not only to cover the provisions of section 37 as amended, but the subjects of all the other sections of the act; and such was the holding of this court in *Blake* v. *People, supra,* where the point was specifically urged that the title of the act was bad, as being in conflict with section 13 of article 4 of the constitution.

(2) We think it clear that section 37 does not provide that the lands of the district may be assessed for the purposes specified in that section without notice to the land owners of the district, as that section, as amended in 1909, provides for two weeks' notice in conformity to the provisions of section 3 of *"this act,"*—that is, of the act of which section 37 forms a part as amended, which is the

original act. The question here raised was passed upon adversely to the contention of the plaintiffs in error in *Stack* v. *People*, 217 Ill. 220.

(3) The contention raised under this division of the brief of the plaintiffs in error has already been considered and determined in the second paragraph of this opinion, where it is held the plaintiffs in error were deprived of no constitutional rights by permitting the commissioners to initiate an assessment for the purpose specified in said section 37. In *Blake* v. *People, supra,* the second ground upon which the Levee act was thought to be unconstitutional was, "that it authorizes the county court, and not the owners of land, to create the corporation, and is not, therefore, within the letter or the spirit of the amendment to section 31, article 4, adopted by the people at the November election in 1878, apart from which amendment the General Assembly possessed no power to authorize the creation of such corporation." After holding that *Updike* v. *Wright, supra,* could have no application because of the constitutional amendment adopted subsequent to that decision, the court said, in speaking of this right of the owners to organize a district: "We are unable to discover, here, any limitation or restriction upon the General Assembly as to the agencies to be used in the creation of the corporation." And in *Kilgour* v. *Drainage Comrs. supra,* the same question was raised and the same result reached by the court. (See, also, *Huston* v. *Clark, supra.*) In the later case of *Binder* v. *Langhorst, supra,* it is held that not only the commissioners can proceed under section 37, but that they must proceed under section 37 in a proper case or be liable for damages or be coerced by *mandamus.*

Our conclusion is that no valid constitutional objection has been suggested by plaintiffs in error to said section 37.

*Fifth*—It is urged the petition was not sufficient because it does not give the names of all the land owners in the district. We are unable to discover that this question was

raised in the court below and it cannot be raised in this court for the first time. (*Spring Creek Drainage District v. Elgin, Joliet and Eastern Railway Co. supra.*) Section 37 does not require the petition to contain such information, although section 2 of the act for the organization of drainage districts seems to contemplate that the petition shall give the names of the owners, if known. In *Huston v. Clark, supra,* it was held that the failure to state the names of land owners in a petition for the formation of a drainage district could not be taken advantage of by a land owner on appeal from a judgment confirming a special assessment on his land, where he had contested the application without making any objection on that account, so as to afford an opportunity to obviate the objection by amendment. The *Huston case, supra,* fully answers the position of plaintiffs in error that it was necessary that the petition state the names of the land owners of the district.

*Sixth*—It is also urged that the affidavit of non-residence filed with the petition is insufficient because it does not state that the affiant (one of the commissioners) was unable to ascertain, upon diligent inquiry, the residence of certain unknown non-resident land owners. The affidavit did state that there were certain unknown land owners and that upon diligent inquiry the affiant was unable to ascertain who they were, and upon the defect in the affidavit being pointed out, the defendants in error, by leave of court, filed an amended affidavit supplying the omission in the original affidavit, and we think this practice admissible by virtue of the terms of section 4 of the Levee act, which provides that the petition, affidavit and order of court may be amended. Affidavits in attachment proceedings, which are jurisdictional by virtue of the statute, may be amended, and we have no doubt but that the legislature may authorize such amendments in drainage proceedings. If, however, the affidavit as to unknown residents was wholly insufficient and the defect was not cured by amendment, that fact fur-

nishes no sufficient reason for the reversal of the judgment
of confirmation as to the plaintiffs in error. Sections 60
and 61 of the Levee act furnish a method whereby non-
residents who have not been properly served by publication
or entered their appearance prior to confirmation may be
subsequently brought into court and made parties to the
judgment of confirmation, and as no non-resident is now
objecting for want of notice, the plaintiffs in error cannot
object for them, as they cannot complain of defects in the
proceedings or rulings of the court which only affect other
parties to the proceedings. (*Iroquois Drainage District* v.
*Harroun,* 222 Ill. 489; *Spring Creek Drainage District* v.
*Elgin, Joliet and Eastern Railway Co. supra.*) The cases
of *Mason and Tazewell Drainage District* v. *Griffin,* 134
Ill. 330, and *Sanner* v. *Union Drainage District,* 175 id.
575, were proceedings under the Farm Drainage act for
the purpose of organizing districts, and differ from the
case at bar.

It is also said the notice given by the commissioners for
the hearing before the jury upon the question of benefits
and damages was insufficient. No one is here objecting to
that notice who did not appear and who was not heard be-
fore the court and jury upon those questions, and having
appeared generally, it makes no difference whether they
were properly notified of the hearing before the jury or
not, and they are not in a position to complain on behalf
of persons who did not appear. We are of the opinion
that judgment of confirmation should not be reversed by
reason of the want of sufficient affidavit of non-residents,
or by reason of a defective notice to appear before the jury
on the hearing upon the question of the assessment of bene-
fits and damages.

*Seventh*—After the commissioners had completed their
roll of assessments, by leave of court they were permitted
to amend the roll by adding thereto certain omitted prop-
erty and by assessing benefits to the highways of the dis-

trict. The owners of the property added and the commissioners of highways are not here complaining, and the same rule applies here as applies with reference to notice. If the owners of the added property and the commissioners of highways are satisfied and do not desire to object to the judgment of confirmation, the plaintiffs in error are not in a position to object for them.

*Eighth*—It is objected that the court erred in admitting in evidence the roll of assessments of the commissioners and in permitting the commissioners to testify upon the trial as to the basis upon which the assessments were made. The Levee act provides that the roll of assessments made by the commissioners shall make a *prima facie* case. This implies that the roll of assessments will go to the jury, and when so admitted will carry such probative force as to entitle the commissioners to a verdict confirming the assessment as made by them if the *prima facie* case made by the roll of assessments is not overcome by the objecting land owners. The court did not err in permitting the roll of assessments to go to the jury, and while it was not necessary that the commissioners should have been called in chief as witnesses, their evidence clearly was admissible in rebuttal, and the judgment of confirmation should not be reversed by reason of the fact that the plaintiffs in error put in evidence all their proof before resting their case. In *Lovell* v. *Sny Island Drainage District, supra,* on page 203, it was said: "The assessment roll makes out a *prima facie* case, and the commissioners are not required to resort to other evidence, except such as may be necessary to meet the evidence introduced by the objectors to impeach the assessment. (*Briggs* v. *Union Drainage District,* 140 Ill. 53.) A *prima facie* case must prevail unless it be rebutted or the contrary proved. (1 Starkie on Evidence, 544.) *Prima facie* evidence of a fact is such evidence as in judgment of law is sufficient to establish the fact, and if not rebutted it remains sufficient for the purpose." And in *Trigger* v.

*Drainage District,* 193 Ill. 230, it was said, on page 235: "Counsel admit that the assessment roll made a *prima facie* case for the district, but they seem to insist that 'when any evidence is introduced on behalf of the objectors then such *prima facie* case loses its force in law, and evidence of some nature must be introduced to rebut objector's evidence.' This, they say, 'has always been the law, and we need cite no cases to sustain our contention.' We held directly the contrary in *Lovell* v. *Sny Island Drainage District, supra,* citing *Briggs* v. *Union Drainage District, supra,* Starkie on Evidence, 544, and *Kelly* v. *Jackson,* 6 Pet. 622."

*Ninth*—It is contended the jury erred in making the assessment, in this: that the lands of some of the objectors were assessed more than they will be benefited, while the lands of others are assessed more than their proportionate share of the cost of the improvement. The jury went upon the lands, and we have been unable to see that the court erred in its rulings upon the evidence which was submitted to the jury, and their assessment, we think, is well within the evidence. We are not, therefore, disposed to disturb the assessment upon the evidence.

*Tenth*—Complaint is made that the assessment roll of the commissioners, which went to the jury upon the subject of benefits, also contained an estimate of the damages. That part of the roll the jury were instructed not to consider, but that in making up their finding upon the question of damages they should be governed by the evidence submitted to them on that question other than the roll of assessments. The jury could not, therefore, have been misled upon the question of damages by the admission of the roll of assessments, and the fact that generally the jury and the commissioners agreed upon the amount the several tracts of land in the district would be benefited or damaged does not tend to impeach the assessment roll as finally agreed upon by the jury and returned into the court.

*Eleventh*—Complaint is made of the rulings of the court upon the instructions which were given by the court to the jury. The plaintiffs in error offered no instructions and but five were given to the jury on behalf of the defendants in error. No specific errors are pointed out in the instructions but the criticisms made thereon are general, and we have been unable from their perusal to discover any errors which should work a reversal of the judgment. We think the jury were fairly instructed as to the law.

We have given this record a patient examination and are of the opinion there is found therein no substantial error. The judgment of the county court will be affirmed.

*Judgment affirmed.*