THE FOUNTAIN CREEK ·DRAINAGE DISTRICT No. 1, Defendant in Error, *vs.* AARON W. SMITH *et al.* Plaintiffs in Error.

*Opinion filed October 16, 1914.*

1. DRAINAGE—*record need not show affirmatively that commissioners have examined all the land.* While every fact essential to the jurisdiction of the county court to organize a drainage district under the Levee act must affirmatively appear in the record, yet the examination of the land by the commissioners, as required by section 9, is not a jurisdictional fact and need not affirmatively appear in the record.

2. SAME—*when failure of officer signing jurat to give his official character is not fatal.* The failure of the· officer signing the jurat to an affidavit to state, after his signature, his official character is not fatal, where it appears from other papers in the record, including the file-mark on the affidavit itself, that such officer was county clerk and clerk of the county court.

3. SAME—*what does not invalidate the clerk's notice of hearing.* Under the Levee act the duty rests upon the clerk of the county court, upon the filing of a petition to organize a drainage district, to fix a time and place for hearing without any order of the court, and the facts that a petition is presented to the court and the court enters an order setting the same time and place as fixed by the clerk for the hearing does not invalidate the notice of the clerk even though the order is faulty.

4. SAME—*district may determine width of right of way needed.* A levee drainage district, being a corporation having the power of eminent domain, may in good faith determine for itself the width of the right of way needed for its ditches, and the courts will not interfere with its determination in that regard unless it appears there has been an abuse of discretion.

5. SAME—*owner's use of right of way not occupied by ditch is limited.* Under the Levee act the owner of land through which a right of way for a ditch is condemned owns the fee after condemnation, but he has only such right to use the land as is not inconsistent with the easement required by the drainage district.

WRIT OF ERROR to the County Court of Iroquois county; the Hon. JOHN H. GILLAN, Judge, presiding.

C. E. RUSSELL, and DYER & DYER, for plaintiffs in error.

A. F. GOODYEAR, and SAUM & MALO, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a proceeding in the county court of Iroquois county to establish under the Levee act a drainage district partly in Iroquois county and partly in Vermilion county. The petition was filed September 23, 1913, in the county court. At the time and place fixed in the notice of the clerk, given as required by the statute, the county court, after a hearing, decided that the petition was signed by a majority of the land owners owning more than one-third of the land in the proposed district and that the court had jurisdiction of the subject matter and all of the parties to the cause, and appointed three competent persons to act as commissioners to lay out the proposed district and make a report in accordance with the statute. Objections were filed to the commissioners' report by plaintiffs in error, which, after a hearing, were overruled, and an order was entered, in accordance with the provisions of section 16 of said act, organizing the district. From that order this writ of error has been sued out.

From the record it appears that the improvement is estimated to cost $38,500, and that it extends about six and one-half miles north and south and about one and one-half miles east and west, and contains some 6000 acres, the proposed drains to be constructed being in part open and in part tile. The outlet of the drainage district is at the northerly end, into Pigeon creek, about 300 feet north of the north line of section 6, township 24, north, range 13, in Iroquois county. This main ditch or outlet is proposed to be constructed with a 100-foot right of way, and extends in a northerly and southerly direction entirely across said section 6. Plaintiffs in error own the south-east quarter of said section. The open ditch as proposed to be constructed through their lands will be 7 feet deep, 6 feet

wide at the bottom and 27 feet wide at the top. The 100-foot right of way across plaintiffs in error's land contains 6.71 acres.

Counsel for plaintiffs in error contend that the record fails to show that the county court had jurisdiction to organize the district. Every fact essential to the jurisdiction of the court to establish a drainage district under this act must be shown affirmatively in the record. (*Wayne City Drainage District* v. *Boggs,* 262 Ill. 338; *Drummer Creek Drainage District* v. *Roth,* 244 id. 68.) Section 9 of the Levee act, as amended in 1909, (Hurd's Stat. 1913, p. 923,) provides that "immediately after their appointment the commissioners shall examine all the land proposed to be drained or protected and the lands over or upon which the work is proposed to be constructed" and determine several things specified in said section. Counsel for plaintiffs in error argue that this provision as to requiring all the lands to be examined by the commissioners is mandatory and that the record must show affirmatively that they have done so; that such showing is jurisdictional, and that as this record does not show that fact affirmatively the case must be reversed. The entire report of the commissioners as to its bearing on this question, fairly construed, in our judgment does show affirmatively that they examined all the lands. But, waiving that question, we do not think the record must show that they have done this in order to give the court jurisdiction. This court has held that the report of the commissioners under this act is simply advisory in its character; that the court is not in any way bound by it. (*Sny Island Drainage District* v. *Shaw,* 252 Ill. 142; *Michigan Central Railroad Co.* v. *Spring Creek Drainage District,* 215 id. 501.) Said section 16 gives the form of the order for organizing the district and does not include within its terms any reference to the report of the commissioners. The report of the commissioners is not jurisdictional, as that word was used in the decisions first cited

in this opinion and relied upon by counsel for plaintiffs in error.

Counsel further contend that the affidavit filed by three signers of the petition, as required by section 5 of the act, stating that they have examined said petition and are acquainted with the locality of said district, and that the petition is signed by a majority of the owners, of lawful age, owning more than one-third of the area of the lands in the proposed district, was defective because it was sworn to before a person not shown by the record to have authority to administer oaths. The affidavit was sworn to before Clarence South, who did not give his official character after his signature to the jurat. This affidavit, however, with the jurat attached, was filed the same day it was sworn to, and marked, "Filed October 20, 1913.—Clarence South, county clerk and clerk of the county court." It appears from this record that Clarence South was county clerk and clerk of the county court, and he had authority, therefore, to administer oaths. The omission to affix the official description is not usually deemed material where the official character of the officer sufficiently appears from other papers in the cause. (2 Cyc. 31, and cases cited.) This court has held, under a similar state of facts, that it will be presumed that the affidavit was sworn to before the clerk. *Singleton* v. *Wofford,* 3 Scam. 576.

It is further contended that the county court lost jurisdiction of the case because by an order entered September 23, 1913, it referred to the petition as being filed September 22, when, as a matter of fact, it was filed September 23; that the county court was without jurisdiction to correct this order, as it attempted to do, on December 1, 1913, the term having expired. Under the Levee act the duty rests upon the clerk of the court, without an order of the court, to fix a time and place for the hearing, upon the filing of a petition. This was done, and the fact that a petition was presented to the court and the court entered an order

setting the same time and place as set by the clerk for the hearing does not invalidate the notice of the clerk, even though the order of the court was faulty.

Counsel for plaintiffs in error further argue that the court should have sustained objections to the organization of the district because the evidence presented proved that the 100-foot strip across their land was not needed; that a 66-foot strip was sufficient. Two witnesses, one a surveyor, testified for plaintiffs in error that a 66-foot right of way was adequate. Four other witnesses, who had experience in farming, thought that 100 feet was unnecessary but did not fix definitely what width would be needed. The report of the commissioners recommended 100 feet. One of the engineers who prepared the plans and profiles introduced in evidence showing the character of the work, testified at some length with reference to these plans. He stated that a 100-foot right of way was required for the proposed ditch; that the plans called for an 8-foot berme on each bank, which would make a space of 43 feet between the inside edges of the spoil banks; that the spoil banks would require 20 feet on each side if the dirt were dumped evenly by the dredge, but as it was frequently necessary to dump it unevenly, more than 20 feet on each side would be required; that it would be necessary, on either side, to reach the ditch and right of way with wagons carrying coal or other supplies; that it was usual in digging ditches of this character in that county to have a right of way of 100 feet; that they might possibly get along with an 85-foot right of way on the Smith land but the spoil banks would run over in places.

This court has decided frequently that a corporation having power to exercise the right of eminent domain will be permitted a large discretion in determining for itself the amount of land necessary to be taken. This right, however, is subject to all the statutory and constitutional restrictions on the subject, and the courts are clothed with

the power to prevent an abuse. (*Bell* v. *Mattoon Water-Works Co.* 245 Ill. 544; *Terre Haute and Peoria Railroad Co.* v. *Robbins,* 247 id. 376.) If petitioner acts in good faith and shows a reasonable necessity for the condemnation, in view of its present and future business, its discretion will not be interfered with. (2 Lewis on Eminent Domain,—3d ed.—secs. 453, 601; *Pittsburgh, Fort Wayne and Chicago Railway Co.* v. *Sanitary District,* 218 Ill. 286; *Schuster* v. *Sanitary District,* 177 id. 626; *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 id. 511.) This court, in considering the principle involved in this case in *Lockie* v. *Mutual Union Telegraph Co.* 103 Ill. 401, held that where the statute did not designate the width of the strip of land to be taken for telegraph purposes, a strip half a rod in width for a single line of poles was not unreasonable in amount. In construing the right to take land for right of way under the statute here under consideration, it was said in *Smith* v. *Drainage District,* 229 Ill. 155, that "if the court finds that the use for which the property is to be taken is a public one, then the court will not inquire into the extent to which the property is necessary for such use, unless it appears that the quantity of property taken is grossly in excess of the amount necessary for the use." No such abuse is shown on this record.

There is no force in the argument of counsel that the testimony of the engineer of the district, on cross-examination, to the effect that it did not make any difference to the owner how wide the right of way was, as after the ditch was dug he had the use of all not used for ditch purposes, shows that the proposed width was unreasonable. He had already testified positively that 100 feet was necessary, giving apparently good reasons for his opinion. He was the only witness of experience who had gone over the ground and made an accurate estimate. While under this act the owner retains, after condemnation, a fee in the land condemned, yet he would only retain such right to so use

the land as would not be inconsistent with the easement required by the drainage district. (*West Skokie Drainage District* v. *Dawson,* 243 Ill. 175.) That easement might require the district to come upon the strip to repair and look after the ditch. The fact that the engineer was mistaken as to the law does not destroy the value of his testimony as to the practical reasons why the district should have 100 feet for right of way.

The judgment of the county court will be affirmed.

*Judgment affirmed.*