THE COMMISSIONERS OF LITTLE BEAVER SPECIAL DRAIN-
AGE DISTRICT, Defendants in Error, *vs.* ISAAC LIVINGS-
TON *et al.* Plaintiffs in Error.

*Opinion filed December 22, 1915.*

1. DRAINAGE—*effect where farm drainage district changes to a levee district.* Where a farm drainage district elects to change to a levee district under section 65 of the Levee act, all future work must be in accordance with the provisions of the Levee act, including the provisions of section 37 relating to repair work.

2. SAME—*report of probable aggregate amount of benefits is merely advisory.* The report of the probable aggregate amount of benefits, required by the Levee act, is a preliminary report and is merely advisory to the court and not conclusive as to the amount which may be raised by assessment.

3. SAME—*special assessment cannot exceed benefits to land assessed.* A special assessment must be spread so that no land will be burdened with more than its proportionate cost of the improvement, and in no case may the assessment exceed the benefits to be derived from the proposed improvement.

4. SAME—*when permitting expert witnesses to testify to benefits is error.* In a proceeding under the Levee act before a jury it is error to permit expert witnesses to testify that the district, as a whole, will be benefited as much or more than the entire assessment, as such testimony is misleading and has no tendency to aid the jury in determining the benefits as to the individual pieces of property assessed.

5. SAME—*section 17b of Levee act construed.* The provision of section 17b of the Levee act reading, "which verdict when so completed shall produce the total sum of the estimated cost of the proposed work," etc., cannot be construed to require the property of the district to be assessed the total amount of the estimated cost, regardless of the amount of benefits to the individual pieces of property, but only when the benefits to individual pieces of property assessed, taken together, equal the total estimated cost.

6. SAME—*when form of verdict is misleading.* In a proceeding for a special assessment under section 37 of the Levee act, the court, in giving the form of verdict, should not fill in the total amount of the estimated cost of the improvement as the amount which ought to be assessed against all the property of the district, but should leave that matter blank.

7. SAME—*allowing engineer to accompany jury over the district is error.* It is error to allow the engineer who has made the plans and estimates of the proposed drainage improvement to accompany the jury on its inspection tour of the district, where the property owners object to such action.

8. SAME—*claim that assessment includes large emergency fund should be made in county court.* A claim that the assessment for drainage work includes a large sum for an emergency fund over and above the estimated cost of the work, court expenses and engineer's fees should be made in the county court and cannot be raised for the first time in the Supreme Court.

9. SAME—*general appearance waives alleged insufficiency of the notice of hearing.* Land owners who appear generally and participate in the hearing on the assessment roll, without any specific objection to the sufficiency of the notice of the hearing, waive the objection and submit themselves to the jurisdiction of the court.

WRIT OF ERROR to the County Court of Kankakee county; the Hon. A. W. DESELM, Judge, presiding.

W. G. BROOKS, for plaintiffs in error.

W. H. SAVARY, for defendants in error

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a proceeding in the county court of Kankakee county, under section 37 of the Levee act, for improving the drainage of Little Beaver Special Drainage District in Kankakee and Iroquois counties. The petition alleged the insufficiency of the existing drainage and specified a plan of work for improvement by deepening and widening, making new ditches and transforming some of the open ditches into tile drains, at an estimated cost of over $94,000. On a hearing before the county court the county judge, having visited the territory in question, thereafter, on August 11, 1913, directed the commissioner's to modify their plans. This was done by said commissioners by filing a supplemental petition outlining a plan of drainage of partly tile and partly open ditches at an estimated cost of $78,200. On this supplemental petition a hearing was had and the jury returned a roll assessing the property in the district for benefits at a total of $78,200 and repair tax of $2500 annually, and also different amounts for land actually taken but allowing no damages as to land not taken. In accordance with this verdict the county court ordered the repair and construction of the ditches in question. From this finding of the county court this writ of error has been sued out.

The district here in question was originally organized under the Farm Drainage law but had been changed by a vote of the land owners, some time before this proceeding, into a levee drainage district, apparently under the provisions of section 65 of the Levee act. (Hurd's Stat. 1913, p. 944.) It is argued by counsel for plaintiffs in error that this was practically a new district, and that the only way the proceedings could have been started was by a petition of a certain proportion of the land owners, as provided for the organization of new districts under said Levee act. With this we do not agree. While there are a number of new tile drains in the proposed plan and changes in certain other portions of the ditches, we do not think the record

shows that it was an entirely new system or the practical creation of a new district. Said section 65, under which the farm drainage district was made a district under the Levee act, provides that after it has been so organized thereunder "all further proceedings and work of such district shall, thereafter, be in the manner provided by this act," etc. Manifestly, it was intended that all future work should be in accordance with the provisions of the Levee act, and thereafter the provisions of section 37 as to repair work would control, the same as if this district had been originally organized under the Levee act and the first work done thereunder. The argument by counsel that this would be unjust and that the land owners ought to have something to say about the work is without merit, as when they voted to re-organize under this law they must have clearly understood that the provisions of said Levee act thereafter applied.

Counsel for plaintiffs in error further contends that the property of his clients is not benefited the amount it is assessed. There are seventy-eight persons named in the assessment roll, the entire acreage of the district being 13,154. Some thirty witnesses testified definitely and directly as to over one-third of the acreage of this district, to the effect that the proposed work was unnecessary and would be of no benefit. About the same number of witnesses testified there would be no benefit to the land they owned or on which they were located as tenants, and a number testified concerning lands which they did not occupy, to the same effect. Some of them testified that the same result could be had by cleaning out some of the existing ditches as would be attained by the elaborate plan proposed by the commissioners. The general testimony of plaintiffs in error was substantially to the effect that all the entire district needed was simply a cleaning out of the present ditches and drains. For the district, the civil engineer who made the plans, profiles and specifications for the proposed work tes-

tified that he was acquainted with the fair cash market value of the land in the district and gave his estimate of the value of eleven different pieces of property. He testified that in his judgment every piece of property in the district would be benefited by the proposed work the amount of the assessment. Three other expert witnesses for the commissioners testified substantially to the same effect. The above was practically all the testimony on either side, although a few witnesses testified for the district on certain minor points. It is plain that the evidence was strongly conflicting, and while we are not prepared to say that we would reverse the judgment on account of the evidence failing to show that the property was not benefited the amount it was assessed, it is clear from the state of the record that the rulings of the court on the admission of evidence and as to instructions should be accurate.

The four expert witnesses for the district, over the objection of counsel for the plaintiffs in error, testified before the jury that the district, as a whole, would be benefited as much as or more than the entire assessment. We think this was error. The report of the probable aggregate amount of benefits required under the Levee act is a preliminary report, and is merely advisory to the court and not conclusive as to the amount which may be raised by assessment. (*Sny Island Drainage District* v. *Shaw,* 252 Ill. 142.) A special assessment must be spread so that no land will be burdened with more than its proportion of the cost of the improvement. Under our constitutional provisions relating to drainage a special assessment can only be made on property benefited by the proposed improvement, and in no case may the assessment exceed the benefits to be derived from the proposed improvement. (*People* v. *Welch,* 252 Ill. 167.) It would in no way aid the jury in finding the benefits on each individual piece of property to have witnesses testify that the property within the district would be benefited the total cost of the proposed improvement. Every owner of

property has a right to a hearing on the question whether the assessment exceeds the benefits, before the tribunal authorized by law to determine it. (*People* v. *Whitesell,* 262 Ill. 387.) In this proceeding the tribunal was a jury. This objectionable evidence was not only permitted, but an instruction was given to the jury as follows:

"The court instructs you that the estimated cost of the proposed work of said district and the proceedings incident to the same is $78,200, and that if you believe, from the evidence and your own view of the premises, that the benefits, if any, to be derived by the lands in said district from said proposed work will equal or exceed said sum of $78,200, then in that case you must return a verdict which shall produce, in the aggregate, the total sum of $78,200."

Another instruction substantially to the same effect was also given. While it is true an instruction was given for plaintiffs in error which stated the correct rule of law on the question, yet in view of the instruction already quoted and another very like it, and the evidence admitted as to the property in the district being benefited to the amount of the estimated cost of the improvement, the jury were almost certain to be misled on this question and would reach the conclusion that it was necessary for them in some way to assess the entire amount of the cost of the improvement against the property in the district. As was said by this court is a very similar case, (*People* v. *Whitesell, supra,* on p. 391,) to hold that the jury "must consider the benefits conferred upon other parts of the district by the improvement, and, taking the whole district and entire improvement, find whether the benefits equal the cost, would be to deprive the particular land owner of the protection against assessments exceeding benefits which the constitution gives him." The trial court admitted this testimony on the theory that section 17*b* of the Levee act so required. That portion of the section relied on reads: "which verdict when so completed shall produce the total sum of the estimated cost

of the proposed work and the proceedings incident to the same," etc. (Hurd's Stat. 1913, p. 927.) Of course, this provision of the statute would be unconstitutional, under the authorities already cited, if it required the property to be assessed the amount of the estimated cost of the total improvement, regardless of whether the individual pieces of property were benefited the amount they were assessed. In order to uphold this statute it must be construed to mean, in connection with the rest of the act, that the individual pieces of property are assessed no more than they will be benefited, and that, taken together, the total amount of said individual assessments should equal the total estimated cost. Obviously, the total amount of the assessment cannot be raised on the property assessed unless the sum of the benefits derived by each individual piece in the proposed improvement equals the proposed assessment. The first question for the jury to decide was as to the benefits to each individual piece of property, then, if the assessment was required to be lowered on certain pieces of property in order that the assessment should be no more than the benefit, the jury would, of course, be permitted to raise the assessment on other pieces of property within the limits of the amount such other property was benefited, and in this manner the total estimated cost might be assessed but in no other. The jury might also have been misled on this point by the form of the verdict given to them, in which the court inserted the total amount of the estimated cost of the improvement as the amount that ought to be assessed against all the property of the district. A blank should have been left in the form of the verdict in which the jury could insert the total amount assessed, and the instructions referred to above, which practically directed a verdict, should have included a statement that in reaching the result no individual piece of property should be assessed more than it was benefited.

At the close of the evidence heard in open court, after the arguments of counsel and the giving of the instructions, the jury, under the provisions of section 17*b* of the Levee act, selected a foreman and clerk and examined the lands proposed to be assessed. Before they started to do this the court asked plaintiffs in error if they had chosen anyone to accompany the jury, along with the engineer of the district. Counsel for plaintiffs in error thereupon answered, "No, we have not." The court thereupon, in the presence of the jury, said, "I will instruct the engineer to accompany the jury to locate the drains for them, and the objectors may choose anyone they wish, to see that the engineer confines himself only to such work." Counsel for plaintiffs in error stated, "We have no one competent for that purpose and we object to Mr. Zarley accompanying the jury." The court then said, "It will help the jury to understand the improvements better and save a lot of time and expense to the county, and I am going to send the engineer out with them and run the risk of the Supreme Court." To this ruling of the court counsel for plaintiffs in error excepted. There is no provision in the statute authorizing the engineer to accompany the jury, and we know of no authority upholding such practice in litigation of this character. The engineer in question drafted the plans and did all the estimating for the proposed work,—indeed, had entire charge of the preliminary work,—and testified that he was interested in the result. Without in any way intimating that he would intentionally disregard the instructions of the court that he was to confine himself to pointing out the drains, in view of his familiarity with all of the details of the work it is practically certain that unconsciously at various times, in accompanying the jury over this large district, he would state his views as to material points connected with questions they were to pass upon. Under the circumstances of this record we think it was error for the trial court to di-

rect the engineer to accompany the jury, over the objection of plaintiffs in error.

Counsel for plaintiffs in error further contends that it was improper for the commissioners to include an emergency fund of nearly $10,000 in the assessment roll. Counsel argues that this was included, not as to the estimated cost of the work nor the estimated court expenses or engineer's fees, but as an emergency fund over and above all these. This point does not seem to have been raised in the trial below and cannot be raised for the first time in this court. That is a question that should be presented to the trial court, and on a proper showing items that were not properly included in the assessment could be excluded from the estimate. (See, as bearing on this point, *City of Nokomis* v. *Zepp,* 246 Ill. 159, and *City of Decatur* v. *Barteau,* 260 id. 612.) An enlarged estimate simply for the purpose of an emergency that cannot now be anticipated should not be included in the estimate or in the assessment. Any such emergency that cannot be anticipated can be properly provided for, under the provisions of this statute, under a later and supplemental assessment.

It is further objected that the notice of the hearing on the assessment roll was insufficient under the statute. Plaintiffs in error, however, appeared generally and did not enter a special appearance and specifically object on this ground in the trial below, and they therefore submitted to the jurisdiction of the court. *Sny Island Drainage District* v. *Shaw, supra; Nicholes* v. *People,* 165 Ill. 502.

Certain other objections are raised in the brief of counsel for plaintiffs in error, but as we understand the points made and the record herein we do not deem it necessary to consider them.

The judgment of the trial court will be reversed and the cause remanded to that court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*