(No. 33532.— )

Tʜᴇ Cɪᴛʏ ᴏꜰ Cʜɪᴄᴀɢᴏ, Appellee, *vs.* Nᴇᴡʙᴇʀʀʏ Lɪʙʀᴀʀʏ *et al.*—(Jᴏʜɴ W. Pᴀɢᴇ, Appellant.)

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

HARRY H. RUSKIN, and JOSEPH ROSENBAUM, both of Chicago, for appellant.

JOHN C. MELANIPHY, Acting Corporation Counsel, of Chicago, (FRANCIS S. LORENZ, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is a direct appeal from a judgment of the circuit court of Cook County entered on November 15, 1954, in an eminent domain proceeding instituted by the city of Chicago for the condemnation of an entire city block in the city of Chicago for a parking facility.

The city of Chicago, on November 20, 1953, filed its petition to condemn, averring therein its organization as a municipal corporation under the Revised Cities and Villages Act; its authority to establish and maintain parking facilities for motor vehicles and to acquire property therefor; the passage by its city council on September 18, 1952, of an ordinance for the issuance of Parking Facility Revenue Bonds; the passage on October 31, 1952, of a supplemental ordinance; and the passage on January 26, 1953, by its city council of an ordinance for the acquisition of parking facilities. The petition further alleged the necessity of the described real estate for the extension, expansion and improvement of the parking facilities; the inability to agree upon compensation; the desire to acquire title to the real estate described; the names of interested parties; and prayed for the ascertainment of just compensation and general relief.

The appellant, John W. Page, is the owner of parcel 5

in site 6, being seven contiguous lots in the southwest corner of the site comprising a rectangular tract approximately one seventh of the area of the block and having a frontage of 160 feet on Huron Street and 117 feet on St. Clair Street.

Appellant's traverse of the petition asserts that the proceedings for condemnation were fatally irregular: first, because the city did not submit the project to the Plan Commission for its approval prior to the adoption of the ordinances; second, because the project, as provided for in the ordinances, does not require the entire block for the construction of multiple level off-street parking facilities for 1200 cars and the entire block is an unreasonably excessive amount of land required for the construction of the multiple level off-street parking facilities; and third, the statutory authority for such proceeding is for the acquisition of facilities for parking of motor vehicles and the ordinances are not limited to parking facilities for only motor vehicles.

The cause proceeded on April 12, 1954, to trial on the preliminary issues on the traverse and petitioner's right to condemnation. The facts as they were developed on the trial are as follows: The Chicago Plan Commission, before any action had been taken by the city of Chicago under the authority of article 52.1 of the Revised Cities and Villages Act, adopted on September 11, 1952, a resolution approving "the establishment and operation of the parking facility for approximately 1200 cars in the block bounded by East Superior Street, North Fairbanks Court, East Huron Street, and North St. Clair Street, designated as Site No. 6 in the location shown in the North Michigan Avenue section of a comprehensive report as submitted by De Leuw, Cather & Company, dated September, 1952."

On September 18, 1952, the city council adopted an ordinance which authorized and provided for the issuance of City of Chicago Parking Facility Revenue Bonds in the

aggregate of $50,000,000. On October 31, 1952, the city council adopted an ordinance which is the first ordinance dealing with a parking facility at site 6. It described the project and estimated its cost to be $7,800,000 and authorized the issuance of Parking Facility Revenue Bonds in that amount and appropriated the proceeds of their sale for the purpose of providing funds for the acquisition, construction and completion of the project.

On December 1, 1952, the city council adopted two ordinances, one accepting a bid of the banking group named to purchase $7,800,000 of bonds, and the other authorizing the mayor to execute and deliver to the banking group an official statement in the form set out in the ordinance in connection with the sale of the bonds. On January 26, 1953, the city council adopted an ordinance declaring that it had been determined that public welfare and necessity required the construction of four parking facilities including parking site 6 under attack here, which ordinance specified the operation and use of said improvement was "for all vehicle-parking purposes."

On May 12, 1954, the trial court entered an order overruling the traverse, denying the motion to dismiss and setting the cause for trial on the issue of just compensation. A jury subsequently impanelled rendered, on October 19, 1954, its verdict that $250,000 was just compensation. On November 15, 1954, the court entered, on the verdict, the judgment appealed from adjudging said sum to be just compensation. No error is assigned on this appeal with respect to the proceedings at the trial to determine just compensation. The sole issue presented is the right of the city of Chicago to maintain this eminent domain proceeding in the light of the evidence adduced at the hearing on the right to eminent domain.

The right of municipalities to establish and maintain parking facilities is granted by sections 52.1-1 to 52.1-10, both inclusive, of the Revised Cities and Villages Act.

(Ill. Rev. Stat. 1953, chap. 24, pars. 52.1-1 to 52.1-10.) The provisions of each of the ten sections of the Parking Act were upheld by this court in *Poole* v. *City of Kankakee*, 406 Ill. 521, and certain requirements of section 52.1-1 and the ordinances of the city of Chicago adopted pursuant to the Parking Act were more recently upheld by this court in *City of Chicago* v. *Central National Bank*, 5 Ill. 2d 164.

Appellant questions the right of the city of Chicago to institute these proceedings for the reason that the ordinance involved failed to use the word "motor," thus enlarging upon the powers granted it by statute. The legislative authority for parking facilities found in section 52.1-1 of the Revised Cities and Villages Act reads as follows: "Any municipality is hereby authorized to: (a) Acquire by purchase or otherwise, own, construct, equip, manage, control, erect, improve, extend, maintain and operate motor vehicle parking lot or lots, garage or garages, parking meters, and any other revenue producing facilities necessary or incidental to the regulation, control and parking of motor vehicles * * * as the corporate authorities may from time to time find the necessity therefor exists, and for that purpose may acquire property of any and every kind or description, whether real, personal or mixed, by gift, purchase or otherwise."

The ordinances of the city of Chicago were adopted pursuant to this statute. Appellant argues that the ordinances are invalid because nowhere do they limit the parking facilities to *motor* vehicles and because of their failure to thus limit the facilities to motor vehicles, the enactment goes outside the scope of the provisions of article 52.1 of the Revised Cities and Villages Act. This court has already recognized the seriousness of the traffic problems which are strangulating every large community and that the cause of such trouble lies in tremendously increased use of automobiles. (*Poole* v. *City of Kankakee*, 406 Ill. 521.) The engineering reports and the report by the mayor to the

city council which are before us in the record clearly demonstrate that the traffic congestion is caused by automobiles and parking facilities are necessary to take care of that condition. We do not believe the omission of the word "motor" in connection with the designation of the purpose of the ordinance is fatal to the validity of the ordinance. The court will take judicial notice of a fact that in this age we are no longer using horsedrawn vehicles and that the vehicles using the streets are motor vehicles, that it is the motor vehicle that is causing the congestion which the corporate authorities are seeking to relieve. We do not feel the cases cited by appellant which require strict construction of the power to condemn are applicable here.

Appellant argues further that the plans and specifications on file here were vague and indefinite. Section 52.1-3 provides that the ordinance shall describe in a general way the contemplated project and refer to plans and specifications therefor. An examination of the plans and specifications will show that the structure to be erected is exceedingly simple. The plans show sizes and dimensions and the specifications show the material. The cases cited by the defendant in an attempt to hold the plans and specifications inadequate are inapplicable here for the reason that they involve special assessment proceedings. Here we have no special assessment, no partial taking where benefits may be assessed back against damage to a remainder. The cost of this improvement will not be charged against a taxpayer but will be paid out of revenue producing bonds. We are of the opinion that the plans and specifications herein attacked sufficiently meet the requirements of the statute.

Another claim of invalidity of these proceedings made by the appellant is "The purported and only act of approval of the Chicago Plan Commission, namely, its resolution of September 11, 1952, occurred before the municipality availed itself of authority under Article 52.1, and is not

an act of approval as required by said Article and Section 52.1-1 thereof." In *City of Chicago* v. *Central National Bank*, 5 Ill. 2d 164, this court had occasion only recently to consider the functions of the Plan Commission. In its operation it is limited to giving advice and making investigation and recommendations for municipal projects and improvements. At page 171 we said: "The Parking Act does not reasonably admit of the construction that it is an additional grant of enlarged power to plan commissions. On the other hand, it reflects legislative intention to protect a comprehensive plan of public improvements against municipal action which might tend to destroy the value of a plan of public improvements. The required approval carries no legal consequences unless and until the city council takes action by passing an ordinance."

The action of the plan commission on September 11, 1952, became effective upon the passage of the ordinances of the city council on October 31, 1952, and January 26, 1953. It is sufficient to satisfy the requirements of section 52.1-1, if at the time of the adoption of the ordinance establishing the site, the Plan Commission shall have approved the location so as not to cause any conflict with any existing comprehensive plan for public improvements. There could not have been any eminent domain proceedings instituted until the passage of the ordinance of January 26, 1953. Since the Plan Commission had already approved the site on September 11, 1952, the requirements of the statute were met.

Finally, it is contended by the appellant that the land being appropriated is unreasonably excessive. The record shows that the area involved is rapidly becoming a hospital center for which few parking spaces have been provided or planned. The De Leuw Report of July 14, 1951, states that recommendations are made therein for the provision of additional off-street space deemed sufficient to serve the needs of the area for the next ten years.

There is proof that the city council of the city of Chicago, as well as experienced traffic engineers and analysts on the subject, not only took into consideration the existing situation but tried reasonably to anticipate the parking need for the next ten years. We all realize that there has been a rapid increase in the ownership and use of automobiles, and that acute problems have arisen in their control and movement. In *City of Chicago* v. *Vaccarro,* 408 Ill. 587, this court had before it a condemnation proceeding wherein it was contended that the property proposed to be taken was excessive and unreasonable. Pertinent to that contention this court said at page 597, "The general rule is that where the legislature has delegated to a corporation the authority to exercise the power of eminent domain, the corporation has also the authority to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of the power granted. * * * As to the amount of land appropriated, this court has decided frequently that a corporation having the power to exercise the right of eminent domain will be permitted a large discretion in determining for itself the amount of land to be taken. It is, of course, permissible for the condemnor to take not only sufficient land for the present need, but it may, and should, anticipate the future increased demands for the public use to which the land is to be devoted. This court is fully committed to this rule. (*Village of Depue* v. *Banschbach,* 273 Ill. 574; *Fountain Creek Drainage Dist.* v. *Smith,* 265 Ill. 138; *Chicago and Western Indiana Railroad Co.* v. *City of Chicago,* 255 Ill. 136; *Bell* v. *Mattoon Waterworks and Reservoir Co.* 245 Ill. 544.) The city of Chicago, in its determination of whether the taking of property is necessary for public use in providing parking facilities at the airport, has a right to and should consider not only the present needs of the public, but those which may be fairly anticipated in the future."

The appellant has failed to show by any evidence that the city has abused its discretion in reaching the conclusion that the property proposed to be taken herein is excessive of an anticipated need. It is uniformly held that it is only where the evidence is clear and satisfactory that the action of the municipal authorities was taken without reasonable grounds and is oppressive that the judiciary will interfere to declare an ordinance for a local improvement unreasonable. If there is a basis for a difference of opinion, the action of the council or board is final. *City of Winchester* v. *Ring,* 312 Ill. 544; *Zurn* v. *City of Chicago,* 389 Ill. 114.

In view of the foregoing we are of the opinion that the trial court was correct in sustaining the validity of the ordinances herein involved.

*Judgment affirmed.*